288

In the Matter of REGINALD LEE et al., Respondents, v THOMAS F. ROCHE, as City Personnel Director, Department of Personnel, City of New York, et al., Appellants.

First Department, January 8, 1981

APPEARANCES OF COUNSEL

*Marvin R. Kwartler* of counsel (*Angelo Aiosa* and *Leonard Koerner* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellants.

*James E. Eagan* for respondents.

OPINION OF THE COURT

SULLIVAN, J. P.

Petitioners are captains in the Department of Correction of the City of New York who, collectively, have challenged

13 key answers to a civil service promotional examination* for the positions of Assistant Deputy Superintendent of Women's Prisons and Assistant Deputy Warden. After receipt of their written protests, a review of the challenged answers was undertaken by the Criminal Justice Task Force which, under the supervision of the Assistant Personnel Director of the Department of Personnel of the City of New York, was responsible for the administration of the test.

Applying as a standard of review whether any objectant's key answer was as good as, or better than, the tentative key answer, the task force members considered the bases for the key answers and compared the objectants' proposed key answers with the tentative key answers. Following this review the task force prepared a test validation report which, for each challenged question, contained a protest response setting forth the rationale for the key answer adopted and the reasons for rejecting any proposed alternate answer. The report recommended that question number 11 be deleted from the examination, and that the tentative key answers to the remaining 79 questions be adopted as the final key answers. The Department of Personnel adopted the report, prompting the commencement of this CPLR article 78 proceeding.

Finding that scrutiny of the 13 challenged questions and answers indicated a "likelihood that at least one of them will be found wanting either as to question or as to answer" Special Term stayed, pending the disposition of this proceeding, the making of any permanent appointments from the promotional list and ordered an immediate trial of the issues. The matter, not being appealable as of right (CPLR 5701, subd [b], par 1), is before us by leave granted by Special Term (CPLR 5701, subd [c]). The order should be reversed and the petition dismissed.

In *Matter of Acosta v Lang* (13 NY2d 1079), the Court of Appeals established the applicable standard for a challenge of key answers on a civil service examination. There, the Civil Service Commission had taken the position that petitioners had the burden of showing that the challenged

---

* Two separate but identical examinations were given.

key answers had no rational basis, and that petitioners' ability to demonstrate that their answers were as good as or better than the key answers was immaterial. The court (p 1081) rejected this argument: "Petitioner is not required to show that there is no reasonable basis for the key answer selected by the commission, but merely that the answer given by the candidate on the test is better or at least as good as the key answer. Where there are two equally acceptable answers to a question, the selection of one as the correct answer must be deemed to be the result of an arbitrary decision [citations omitted]." Thus, although the burden of proof is on the objectant, the proponent of a civil service examination key may not take refuge behind the mere rationality of its selected answer. The challenger has met his burden if he can show that the alternate answer is as good as or better than the key answer.

*Acosta (supra)* is distinguished from the instant case by the absence there of an adequate administrative record supporting a determination that the proposed alternate answers were not as good as or better than the key answers under challenge. Since the protest review had applied an improper standard, a remand for trial was necessary to determine whether petitioners' answers were as good as or better than the key answers. Thus, *Acosta* did not reach the issue before us, namely, the scope of judicial review of an administrative determination which applied the proper standard and found that petitioners' answers are not as good as or better than the key answers.

We hold that where, as here, the Department of Personnel has conducted a thorough review of all protests, consulted with an expert in the field of corrections, and made a rationally supported determination properly applying the *Acosta* standard, the judicial inquiry is at an end and the determination must be confirmed.

In urging a right to a trial *de novo*, petitioners confuse the standard of judicial review in an article 78 proceeding with the standard of administrative review. The judicial standard of review of a civil service examination key challenge is no different from that of determinations of other agencies operating within the field of their specialized competence.

Under this standard, the judicial function is terminated once a rational basis has been found for the administrative agency's determination. (See, generally, *Matter of Sullivan County Harness Racing Assn. v Glasser*, 30 NY2d 269, 277-278; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 230-231.) Because of the deference due the determination of an agency acting within its domain and the respectful concern for the appropriate relationship between the judicial and executive branches of government, "a court may not overturn an agency's decision merely because it would have reached a contrary conclusion". *(Matter of Sullivan County Harness Racing Assn. v Glasser*, 30 NY2d, at p 278.)

In *Matter of Hamm v D'Ambrose* (58 AD2d 540, 541), where a test validation board had applied the *Acosta* standard in conducting a review of protested questions, this court held: "We do not think that every dispute as to whether answers are equally correct, or as to whether particular questions should be deleted, requires a trial by the court. The task of determining such disputes is one for the commission and not the courts unless there is a showing that the commission has acted arbitrarily or capriciously. A trial will tell us nothing that we do not already know that would bear on the exercise of the court's limited power of review. There is no triable issue of fact."

Thus, the issue before Special Term should have been whether a rational basis existed for the Department of Personnel's determination that petitioners' suggested answers were not as good as or better than the key answers. Instead of determining that issue, Special Term proceeded directly to the merits of the dispute over the key answers, and, finding an issue, directed a trial.

That the reviewing court might reach a determination different from that of the Department of Personnel is not sufficient to direct a trial *de novo*. If it appears that the agency's determination that the key answers satisfied the *Acosta* standard is arbitrary or capricious and the reviewing court on the basis of the existing record cannot pass judgment on the key answers, a trial may be appropriate to aid the court in passing on the *Acosta* issues. But a reviewing court may not, without findings to that effect, order a trial merely because it might reach a different conclusion.

Our review of the test validation report shows clearly that the determination adopting the final answer key had a rational basis. At best petitioners show no more than that they disagree with the judgment of the report, as reference to two of the objections will demonstrate.

Objection is made to key answer 17 because it requires acceptance of the general validity of the statement that *"Most* keys should be issued from a central location", while a manual of correction standards states *"All* keys should be issued from a central location." (Emphasis added.)

Candidates were informed in the notice of examination that the written test would include questions on "policies and procedures of the Department of Correction." As the test validation report notes, the Department of Correction's policy, which is controlling, is to permit each institution to establish its own procedures with respect to key control. Not all keys are distributed from a central location. Certain keys, such as special security keys (commissary, storehouse, storage area) are issued from noncentral locations. The manual of correction standards is but a suggested reference, and does not establish department policy. Actual department practice and policy provides only that "most keys" should be distributed centrally. Thus, petitioners' argument that they should be permitted to rely on a procedure in a manual which does not establish department policy is without merit. The rejection of the proposed answer was not irrational.

Petitioners' contention that the key answer to question 37 is "almost silly" is also belied by a comparison of the adopted and proposed answers. Rule 4.25.110 of the Department of Correction of the City of New York prohibits discharge of a prisoner under any circumstances until he has been properly identified and processed for release. Departmental procedure is to fingerprint inmates prior to release on bail. Yet, petitioners argue that in the context the proper answer is to permit the Assistant Deputy Warden to release a recalcitrant prisoner who has made bail but refuses to be fingerprinted. On review the task force found that such an alternative could not be permitted to stand as an acceptable answer not only because of the departmental proscription,

but also because sound policy dictates that such policy not be subject to the whim of the individual charged with enforcing the procedure. Clearly, the rejection of the proposed answer had a rational basis.

Other proposed answers would also offer unacceptable alternatives such as disregard of an express department rule. (questions 26 and 69) ; disregard of an FBI bulletin promulgated as a Department of Correction Letter Order (question 71) ; and differences on matter of judgment between petitioners and the department's experts (question 22).

In sum, the Department of Personnel's rejection of the answers proffered by petitioners to be as good as or better than those of the department has a rational basis. Petitioners' claim that this case is distinguishable from *Hamm* (58 AD2d 540, *supra)*, because there the petitioners were afforded a full opportunity to assert their claims in the administrative process is unsubstantiated and belied by this record.

Accordingly, the order, Supreme Court, New York County (STECHER, J.), entered December 10, 1979, which, *inter alia,* temporarily enjoined respondents from making any permanent promotions to the positions of Assistant Deputy Warden and Assistant Deputy Superintendent of Women's Prisons from a list based on a June 24, 1978 examination and ordering an immediate trial of the issues, should be reversed, on the law, without costs or disbursements, the preliminary injunction vacated, and the petition dismissed.

BLOOM, J. (concurring). While I am in agreement with the majority that the as good as or better than test laid down in *Matter of Acosta v Lang* (13 NY2d 1079), is the appropriate rule to be followed, I am somewhat troubled by the fact that the personnel of the test validation board was the same, or substantially the same, as the people who formulated the original test questions and answers (cf. *Matter of Hamm v D'Ambrose*, 58 AD2d 540). Nevertheless, in order to be entitled to a hearing, petitioners were required to submit evidence to establish, prima facie, that the "answer[s] given by the candidate[s] on the test[s] [are] better or at least as good as the key answer[s]".

*(Matter of Acosta v Lang,* 13 NY2d 1079, 1081, *supra).* This they have failed to do.

MARKEWICH, LYNCH and CARRO, JJ., concur with SULLIVAN, J. P.; BLOOM, J., concurs in a separate opinion.

Order, Supreme Court, New York County, entered on December 10, 1979, reversed, on the law, the preliminary injunction vacated, and the petition dismissed, without costs and without disbursements.