■ In the Matter of JAMES W. RANDOLPH, Respondent, v NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM et al., Appellants. — Judgment, Supreme Court, New York County (McCabe, J.), entered April 18, 1980, annulling a determination of respondent-appellant New York City Employees' Retirement System, unanimously reversed, on the law, and the facts, the determintion reinstated and confirmed, and the petition dismissed, without costs. On January 23, 1973, after 12 years of employment in positions covered by NYCERS, petitioner left to enter into private law practice. In June, 1975, he resumed public employment, this time with the board of education, where he became a member of the Board of Education Retirement System. He learned in 1975 or 1976 that his membership in NYCERS would lapse, and his rights therein would expire, except for return of his contributions, unless, within five years of leaving that system, he resumed membership in public employment covered by it or, alternatively, procured transfer of his credits therein to the BOERS, which he had joined in 1976, retroactive to 1975, upon joining the board of education. (See Retirement and Social Security Law, §§ 40, 43.) The crux of this case is whether petitioner had timely applied, i.e., before January 24, 1978, as he claimed to NYCERS for transfer of his credits from NYCERS to BOERS. Special Term ordered a trial of that issue.[1] The evidence at the Bench trial came primarily from petitioner, corroborated by two associates. He testified that, in November, 1977, which would have been timely, he sent an application form to NYCERS requesting it to transfer his accumulated contributions to BOERS;[2] that it was returned by mail with a handwritten attachment on stationery of the system, which rejected it as not verified; that the document was then lost in his office; that it was then located and an office associate, a commissioner of deeds, placed his official stamp on it without however signing it; that it was again returned for the signature, at which time the commissioner of deeds signed it after changing the date from November, 1977 to February, 1978, and mailed again to NYCERS. The commissioner of deeds testified to these facts as well. Another associate testified that petitioner, who had lost the application, showed it to him together with the handwritten note after finding it, that he saw it, as well as the commissioner's signature on it. Nobody was produced who mailed it at any of these times or who saw it mailed or knew who mailed it. Petitioner admitted that he did not know as a fact who had mailed it; he relied on his secretary, not a witness. The handwritten note was neither produced nor accounted for. NYCERS produced several employees who testified to an unvarying course of business in which every member's every paper was held in a file identified by membership number; that every paper coming in was time-clock stamped in the mail room

---

1. There is at least a doubt whether a trial was properly ordered in 1979. The affidavits first submitted in this proceeding, on the basis of which a trial was ordered, differ in no important detail from the trial evidence. That record was sufficient to sustain a conclusion that the decision of NYCERS had been neither arbitrary, capricious, nor irrational, but sufficient to justify confirmance by Special Term without the necessity of a trial. (See *Matter of Lee v Roche*, 78 AD2d 288.)

2. The process of transfer is, basically, a refund of contributions by one system, turned over to the other, to be credited to the transferring member.

and, on the rare occasion when it might have gotten past that room without stamping, was promptly returned there for that purpose for record; that every piece of correspondence was noted on a record card together with the number of the form suggested to be used for, disposition; that no handwritten note was ever used to advise a member; that, if an unverified or otherwise defective form were received, it would be retained in the file and a new blank sent to the applicant; that petitioner's file contained no application blanks whatever except one received and time-clock stamped March 3, 1978, well past the timely deadline, as, indeed, was the one claimed to have been sent in February. Added to all this evidence is the time-honored presumption of regularity. Special Term had incorrectly ruled that there was no legal requirement that an application for transfer be verified. To begin with, the issue was whether the application had been received at all, not its form. Further, respondent system possessed the authority to establish its own routine office procedures. (See Administrative Code of City of New York, § B3-2.1.) A requirement of verification was one of those procedures; another such procedure was its unvarying office routine. Trial Term compounded the error in its explanation of the ruling after trial that the application was received prior to January 24 because there was no reason to disbelieve petitioner and his witnesses, who, parenthetically, had not even produced evidence of mailing, and because the witnesses for respondent "testified to general office procedure that took place at the time, but none of them could remember anything from their own personal knowledge, *nor would any of them vouch that absolutely nothing could go wrong in the procedure* [emphasis added]." This last reason is patently improper. It seeks to counter affirmative, positive evidence by an absence of negative proof to the contrary. It says that evidence produced to show the greater probability may be offset successfully by failure to prove a negative, i.e., that nothing could have gone wrong with the established office procedure. (See *Matter of Erin Wine & Liq. Store v O'Connell,* 283 App Div 443, 446; 32-A CJS, § 1021; 22 NY Jur, § 645.) If petitioner's evidence is to be accepted, then what had gone wrong was that at least on two occasions, respondent's staff had twice returned the same defective application to petitioner in complete violation of established procedures, and had, in the bargain, committed other violations. These findings are not justified by the evidence. Respondent acted in accordance with these procedures in every respect, and new findings, consonant with the result here reached, are substituted therefor. Concur — Sandler, J. P., Sullivan, Carro and Markewich, JJ.

