■ In the Matter of ROBERT K. WARNER, Petitioner, v NEW YORK STATE RACING AND WAGERING BOARD, Respondent. — Determination unanimously confirmed and petition dismissed, without costs. Memorandum: In this CPLR article 78 proceeding petitioner claims that a determination of the New York State Racing and Wagering Board revoking his license as a harness racing driver was not supported by substantial evidence. Petitioner and four other owners and drivers were charged with participating in a trifecta wagering and race-fixing scheme on January 5, 1982 at Buffalo Raceway. After a hearing the board found that petitioner conspired with the other individuals to fix the outcome of the eighth race and intentionally drove his horse in such a manner as to prevent it from finishing first, second or third. Proof at the hearing established that before the race petitioner engaged in a 10- to 15-minute meeting with a charged coconspirator, which according to petitioner concerned only his sale of a horse. The testimony of Keith Haase, a fellow jockey, that

petitioner later told him that "he had been asked to sit out the [eighth] race" and that he "might as well", was substantially admitted by petitioner. Thomas Swift, another jockey who also drove in the eighth race, testified that he heard "a couple of gentlemen" say before the race that petitioner's horse "might be dead", i.e., "not trying". Petitioner claimed after the race that his horse was lame, and testified at the hearing that immediately before the start of the race the horse "started to pull" and "was on one line", which to him indicated that the horse was lame, and that the horse ran on one line throughout the race. Petitioner's veterinarian also testified that he examined the horse on January 7, 1982 and found that the horse was lame as a result of an injury related to "racing or training". Evidence that the horse was lame was controverted by the track veterinarian who observed the race and watched petitioner's horse. Although there is no evidence that petitioner wagered on the eighth race or was paid off, and no one actually observed him to hold back his horse or interfere with any other horse, his claim that the board's determination is not supported by substantial evidence is without merit. Contrary to his argument the proof of misconduct does not consist solely of his statements to Haase. Petitioner's horse, which was in contention until the ¾ pole, finished last in a 10-horse field 16¼ lengths behind the leader and 7½ lengths behind the next to the last finisher. Petitioner's excuse of lameness was rebutted by the testimony of the track veterinarian and even by his own admissions that he said nothing to the track officials after the race and did not immediately seek veterinary assistance. His own veterinarian testified that the maximum visible signs of lameness take 24 to 48 hours to exhibit themselves. Petitioner never explained how his horse, which was supposedly lame and not acting normally before the race, was able to remain in contention in the race until the ¾ pole. Furthermore, petitioner's horse, although the "morning line" favorite, was excluded from the wagers made by the conspirators on the race. The hearing examiner, who heard the testimony and viewed films of the race, found that petitioner's horse, "the favorite * * * appeared to stay in contention until the ¾ pole, where he moved out, but then slowed noticeably and finished last." After weighing the conflicting testimony he specifically found that petitioner's "excuse of lameness is * * * not worthy of belief." Since substantial evidence exists to support the board's determination, it must be sustained irrespective of whether a similar quantum of evidence is available to support another conclusion (*Matter of Collins v Codd,* 38 NY2d 269; see, also, *Matter of Sowa v Looney,* 23 NY2d 329; *Matter of Stork Rest. v Boland,* 282 NY 256; *Matter of Sport & Fun v Ratner,* 82 AD2d 890). Petitioner's argument that hearsay testimony was improperly admitted and considered by the board is also without merit. Hearings conducted by the board are not bound by common-law or statutory rules of evidence (9 NYCRR 4013.6). Hearsay evidence is admissible at such hearings but standing alone is insufficient to sustain a determination required to be supported by substantial evidence (see *Matter of Riverton Funeral Home v Whalen,* 63 AD2d 887; *Matter of Brown v Murphy,* 43 AD2d 524; *Matter of Erdman v Ingraham,* 28 AD2d 5; *Matter of Shields v Hults,* 21 AD2d 745). In this case the hearsay testimony is not of vital importance (cf. *Matter of Strain v Sarafan,* 57 AD2d 525) nor is it the sole basis of the board's findings (cf. *Matter of Riverton Funeral Home v Whalen, supra; Matter of Del Valle v Sugarman,* 44 AD2d 523), and there is a "residuum" of competent evidence to support the board's determination. Further, we find that the failure to furnish petitioner with copies of prior statements made by certain witnesses was harmless (see, *Gleason v New York State Racing & Wagering Bd.,* 98 AD2d 964). Only the testimony of the witnesses Haase and Swift was damaging to him. Petitioner never denied the veracity of Haase's testimony and Swift's testimony concerned only a rumor. Even if their testimony is ignored, there is substantial

evidence in the record discrediting petitioner's excuse of lameness and establishing his misconduct. We have examined the other issues raised by petitioner and find them to be without merit. (Article 78 proceeding transferred by order of Supreme Court, Erie County, Joslin, J.) Present — Doerr, J. P., Boomer, Green, O'Donnell and Schnepp, JJ.