■ In the Matter of KIM CRAWFORD, Petitioner, v NEW YORK STATE RACING AND WAGERING BOARD, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Essex County) to review a determination of the New York State Racing and Wagering Board which suspended petitioner's harness driver's license for a period of eight days. ¶ While driving a horse in the third race at the Saratoga Raceway on July 31, 1982, petitioner was found to have violated a rule of respondent New York State Racing and Wagering Board (the board) which prohibits drivers from "[c]hanging either to the right or the left when another horse is so near as to be caused to shorten stride, or to be taken back, or to break stride" (9 NYCRR 4117.4 [a]). As a result of that infraction, the penalty of an eight-day suspension from driving was imposed against petitioner and the horse he was driving was disqualified from its second place finish and placed last. Both petitioner and the owner of the horse took administrative appeals to the board (9 NYCRR 4121.5) from the track judges' decision. A joint evidentiary hearing was held, following which the hearing officer issued a report sustaining the charges and penalties. The report was confirmed by the board. Petitioner then instituted the instant CPLR article 78 proceeding to review that determination. ¶ Contrary to petitioner's contention, the record reflects substantial evidence amply sufficient to support the board's determination. The presiding track judge testified to having observed that after passing the three-quarter pole in the last turn of the race, petitioner moved into the three-horse position just as another horse was making a strong bid for the same position. The driver of the other horse was required to maneuver to avoid a collision and, as a result, lost ground. The judge opined that petitioner lacked the necessary clearance in thus changing direction and thereby caused interference with another horse in violation of the foregoing rule. The driver of the other horse involved in the incident also testified and confirmed that petitioner lacked clearance and that he had to "yank [the] horse to avoid contact", which affected his horse's placement at the conclusion of the race. The board rationally applied the pertinent regulation to the facts and was at liberty to choose this version of what happened over the conflicting one offered by petitioner (see *Matter of Belanger v New York State Racing & Wagering Bd.*, 99 AD2d 579). ¶ Petitioner's alternative argument addresses itself to the penalty imposed. The evidence at the hearing disclosed that, following the race and the track judges' determination of the violation, the presiding judge informed petitioner that the uniform penalty for interference was an eight-day suspension, but that if petitioner waived his right to appeal, the suspension would be reduced to five days. The presiding judge acknowledged at the hearing that he made the offer, stating that it was pursuant to board policy in order to discourage frivolous appeals. Petitioner argues that, in effect, the track judge was conditioning the relative severity of the sanction for the violation on whether he appealed, in contravention of procedural due process by reason of its "chilling effect" on his statutory and constitutional rights to appeal from the track judges' ruling. He cites in support of this proposition *North Carolina v Pearce* (395 US 711), wherein it was held that, absent justification by way of additional information of aggravating circumstances, a sentencing court is constitutionally barred from imposing a more severe sanction upon retrial of a conviction reversed on appeal than the sentence originally imposed. Petitioner contends that, like the heavier sentence upon retrial in *North Carolina v Pearce (supra)*, the additional three-day suspension here is nothing more than retribution for his appealing the track judges' decision. ¶ In our view, the criminal justice model petitioner has invoked of resentencing after reversal on appeal does not fit the circumstances here. While denominated an appeal, the process by which an aggrieved party

obtains review of a track official's adverse ruling is actually an evidentiary hearing, *de novo,* stenographically transcribed, with the right to counsel, to cross-examine witnesses, and to present evidence on that party's behalf. Thus, the more appropriate criminal justice analogue to the presiding judge's offer to reduce the period of petitioner's suspension if he did not appeal is the pretrial plea negotiation process, in which a criminal defendant is offered a less severe sanction in exchange for a guilty plea. Both the United States Supreme Court (*Brady v United States,* 397 US 742, 752) and the Court of Appeals (*People v Pena,* 50 NY2d 400, 411-412, cert den 449 US 1087) have upheld the rights of courts and prosecutors to induce a guilty plea through such an offer, despite similar claims of its potential "chilling effect" on the exercise of an accused's right to a jury trial. Petitioner's right to an administrative hearing before the board to adjudicate far less serious charges and sanctions certainly should not be entitled to any greater constitutional protection. ¶ Nor does this court's ruling in *Matter of MacRae v New York State Racing & Wagering Bd.* (48 AD2d 745) require a contrary result. In *MacRae,* the board, without statutory authority therefor, had conditioned the right of administrative appeal on the filing of a bond to be forfeited if the appeal was unsuccessful. This bears no resemblance to what here is essentially an offer to settle the final disposition of administrative charges without a hearing by mitigating the penalty to be imposed. ¶ We have examined petitioner's remaining points and find them equally unpersuasive. The board's determination should, therefore, be upheld. ¶ Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.