■ In the Matter of BERNARD WEBSTER, Petitioner, v JOHN VAN LINDT, as Chairman of the New York State Racing and Wagering Board, et al., Respondents.—In this CPLR article 78 proceeding transferred to this court by order of the Supreme Court, New York County (Irving Kirschenbaum, J.), entered April 23, 1985, which seeks to annul the determination of the New York State Racing and Wagering Board, dated March 28, 1985, which denied petitioner's application for a harness owner-trainer-driver license, the determination is confirmed, without costs.

Petitioner was refused a license on the ground that his "experience, integrity and general fitness are such that his participation in harness racing would be inconsistent with the public interest, convenience and necessity, and with the best interests of racing generally." *(See,* Racing, Pari-Mutuel Wagering and Breeding Law § 309 [2].) The stated basis for this finding was that petitioner, the driver of the horse Rundale

Rosalea in the fourth race at the Meadowlands Raceway on August 6, 1981, participated in a scheme to fix this race; intentionally drove his horse with the purpose of finishing outside the top three positions in the race, in furtherance of the scheme to unlawfully fix that race; and that petitioner's two confederates had substantial winnings on the trifecta betting combination which specifically excluded the horse driven by petitioner, and that these two men shared these unlawful winnings with the petitioner.

The determination of the Racing and Wagering Board was supported by substantial evidence. At the hearing before it, the Board heard the evidence of the taped wiretaps of three telephone conversations Webster had with his confederates earlier on the day of the race. In these conversations, the parties, using racetrack jargon, discussed various methods of throwing a race, referred to the fourth race on that night's schedule, and Webster commented that "it's not gonna be easy, but * * *. I'll get her done somehow."

The videotape of the race indicated, in the words of the hearing officer, that during the stretch, after being passed by two horses, "Webster slowed down his prodding of Rundale Rosalea and looked from his rail position across the field at the horses closing on the number three position in the race. On the second occasion, the Petitioner took a prolonged look at the other horses and did nothing to prod Rundale Rosalea forward at this most crucial point in the race".

On the morning after the race, the parties talked by telephone confirming that one confederate made money wagering on the fixed race and that the other was looking for Webster to pay him his share.

The petitioner urges that there are other explanations for the jargon used in the telephone conversations that are consistent with an attempt to win the race with Rundale Rosalea. The petitioner also claims, as does the dissent, that the events in the race, as revealed by the videotape, are also consistent with an attempt to win the race.

Substantial evidence "means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact [citation omitted]." *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180.) Where substantial evidence exists to support a determination, that determination must be sustained, irrespective of whether a similar quantum of evidence is available to support other varying conclusions *(Matter of Collins v Codd,* 38 NY2d 269,

270), and the court may not overturn an agency's decision merely because it would have reached a contrary conclusion. *(Matter of Sullivan County Harness Racing Assn. v Glasser,* 30 NY2d 269; *see also, Matter of Warner v New York State Racing & Wagering Bd.,* 99 AD2d 680; *Matter of Belanger v New York State Racing & Wagering Bd.,* 99 AD2d 579.)

The *Belanger* case *(supra)* illustrates these propositions of administrative law as applied to the visual evidence of a horse race. There, the horse driven by petitioner was in second place and closing on the leader 90 feet from the finish line. The driver then pulled back on the lines and used none of the visible indications of effort employed to urge a horse on. Faced with this evidence at a hearing before the Board, the petitioner contended that the horse was about to break stride (which would disqualify the horse) so he pulled back on the reins so that the horse would not break stride and thereby insure at best second-place prize money. Petitioner also claimed that although he did not use physical means to spur the horse on, he did urge the horse by yelling.

The hearing officer concluded that the driver was driving with lack of effort and suspended his license. The reviewing court upheld the determination, finding it supported by substantial evidence notwithstanding petitioner's plausible alternative explanation. The court held that its role is not to weigh the evidence and determine whether petitioner's position is supported, but only to review whether the agency's determination is backed by substantial evidence. The court cannot reject the choice of interpretations made by the specialized agency which is charged with enforcing its own regulations. Stated another way, the Board is at liberty to choose its version of what happened over the conflicting one offered by petitioner *(Matter of Crawford v New York State Racing & Wagering Bd.,* 100 AD2d 653) and the reviewing court is bound by the Board's interpretation. *(E.g., Matter of Sullivan County Harness Racing Assn. v Glasser, supra.)*

In the instant case, we should similarly uphold the Board's determination. The videotape of the race certainly supports the conclusion that petitioner engaged in a fraudulent scheme to fix the race, especially when viewed in connection with evidence of the telephone conversations. There is substantial evidence to support the Board's conclusion, notwithstanding that another believable interpretation of the evidence, as urged by petitioner and accepted by the dissent, may indicate that a different conclusion may be drawn.

Nor is it persuasive that Webster was acquitted when tried

in Federal court on criminal charges resulting from this incident. It is hornbook law that an acquittal in a criminal proceeding is not binding on an administrative agency because of the differences in the burden of proof and rules of evidence. Therefore the acquittal of Webster on criminal charges should have no bearing on this proceeding.

The fact that the racing steward's daily report for August 6, 1981 indicates that the fourth race was "all clear" is also not conclusive. The stewards observe the race with a view towards its smooth operation and their "all clear" merely indicates that they did not see any technical infractions of racing rules at the time they viewed the race. The videotape of the entire race revealed that petitioner held back his horse near the end of the race, which, in conjunction with the wiretap evidence, evidenced the fraudulent scheme, which is the basis for the Board's denial of the license.

Moreover, the fact that Webster was granted a license by New Jersey is not binding on the New York Racing Board. The granting of a license by another State does not prevent the New York State Racing and Wagering Board from independently evaluating the application before it *(cf. Lasky v Van Lindt,* 115 Misc 2d 259, *affd* 97 AD2d 986) in furtherance of its goal of maintaining in the public interest proper control over harness racing to ensure the integrity of this highly regulated sport. *(See,* Racing, Pari-Mutuel Wagering and Breeding Law § 309.)

Therefore, we conclude that the Board properly fulfilled its obligation to control licensing consistent with the public interest and in the best interests of harness racing generally (Racing, Pari-Mutuel Wagering and Breeding Law § 309) when it refused to issue petitioner a license. Its decision in that regard was based on substantial evidence both on the grounds of technical racing violations committed during the race (9 NYCRR 4117.4) and also because of petitioner's involvement in the fraudulent scheme. (Racing, Pari-Mutuel Wagering and Breeding Law § 309 [2] [c].) Concur—Sullivan, Kassal and Ellerin, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I dissent and would reverse, annul the determination of the Board, and grant the petition.

The petitioner's license should not be denied for three reasons.

First, and most important, is the weight that must be given to the videotape of the fourth race of August 6, 1981 at the

Meadowlands Race Track in New Jersey. It reveals, as stated in part of the Board hearing officer's determination, that "Webster's horse, Rundale Rosalea broke to the front of the field to the number one position and held that position throughout the race until the stretch run." By setting his horse out in front of the field of horses and holding that position for as long as he did, it is clear that Webster did not attempt to prevent his horse from winning (see, 9 NYCRR 4117.4 [n]) nor did he drive without effort and regard for a successful completion of the race (see, 9 NYCRR 4117.4 [p]). Such racing technique does not appear to be atypical for a horse that had a starting gate position of number 10—one that is the greatest distance from the inside rail of the track. Rather, it shows an attempt at success. Where the visual evidence is equally available to the court as to the Board, we should not be bound by their determination. (See, Bose Corp. v Consumers Union, 466 US 485.)

Second, a New Jersey Racing Commission steward's report for the fourth race on August 6, 1981 indicated "all clear", meaning that there were no irregularities in Webster's racing form. In addition, the State of New Jersey issued a license to Webster for the year 1983, which was following his acquittal and the subsequent dismissal of an indictment for sports bribery, wire fraud, and conspiracy in connection with certain races run at the Meadowlands Race Track. It is arbitrary for New York State to deny a license to a harness owner-trainer-driver based on his performance in a race which took place in a State that (a) found no wrongdoing in that race, and (b) did not deny him a license subsequent to both the race and the acquittal.

Finally, while the burden of proof in the Federal criminal proceeding was beyond a reasonable doubt, and there is a lesser burden in the administrative proceeding, the prior acquittal should give one pause in racing to find the petitioner guilty of fixing the fourth race.