[671 NYS2d 461]

In the Matter of KEITH MCFARLAND, Respondent, v NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent, and CONDÉ NAST PUBLICATIONS INC., Appellant.

First Department, April 14, 1998

### APPEARANCES OF COUNSEL

*Darryl L. Nicholas,* New York City, for Keith McFarland, respondent.

*Barbara M. Marden* of counsel, New York City *(Bruce H. Berry* on the brief; *Sabin, Bermant & Gould, L. L. P.,* attorneys), for appellant.

### OPINION OF THE COURT

SULLIVAN, J. P.

In this CPLR article 78 proceeding, Condé Nast Publications Inc., petitioner Keith McFarland's former employer, appeals from an IAS Court order annulling the New York State Division of Human Rights' finding of no probable cause with respect to petitioner's claim that Condé Nast unlawfully discriminated against him based on race and, because of the Division's purportedly one-sided and abbreviated investigation of the complaint, remanding the matter for further investigation.[1] Since the administrative record belies the IAS Court's conclusion and supports as rationally based the Division's determination of no evidence of discrimination, we reverse, dismiss the petition and confirm the agency determination.

As the record shows, petitioner, a black male, began his employment with Condé Nast, the magazine publishing company, in August 1988, as a junior buyer in the promotions production department. According to the Division, petitioner, throughout his employment, exhibited performance deficiencies for which he was counseled. As a result, in December 1992, petitioner's supervisor, Timothy Faranda, began to document various incidents in which petitioner's shortcomings caused difficulties for his department or the magazine it serviced. On December 14, 1992 Faranda met with petitioner to discuss his failure, in violation of departmental instructions, to review estimates with Faranda before quoting prices to vendors, to fill

---

1. Since an order entered in an article 78 proceeding is not appealable as of right (CPLR 5701 [b] [1]), leave to appeal is granted, *sua sponte*, to Condé Nast (CPLR 5701 [c]).

orders in a timely manner, resulting in complaints from magazine employees, and to keep Faranda apprised of the jobs on which he was working. The meeting was confirmed and the criticism of petitioner's work performance documented in a December 22, 1992 memorandum to petitioner, characterized as a "formal preliminary warning", notifying him that his failure to improve his work performance would result in his being placed on final warning.

According to Faranda, despite this clear warning, petitioner's work performance showed no improvement. The two met on January 7, 1993, and, in a memorandum to petitioner dated January 11, 1993, Faranda confirmed his continued dissatisfaction with petitioner's work performance, specifically referring to his "lack of follow up, [his] failure to come to Faranda with problems or suggestions, [his] failure to follow departmental procedures, and [his] overall handling of [his] desk." Faranda again emphasized that petitioner had to improve his work performance.

Faranda's supervisor met with petitioner on February 11, 1993 and, in a February 16, 1993 internal memorandum regarding that meeting, confirmed that he had told petitioner that an immediate change in his "work habits and attention to detail" was expected. According to the supervisor, petitioner "told [him] he knew [that] the situation was very serious." In a subsequent memorandum to petitioner, dated February 12, 1993, Faranda confirmed his continuing dissatisfaction with petitioner's work performance and reiterated, basically, the same shortcomings. Finally, in a March 10, 1993 memorandum to petitioner, Faranda, citing two instances where petitioner failed to follow specific departmental procedures and caused embarrassment to Condé Nast, placed petitioner on final warning.

These warnings notwithstanding, petitioner's work performance continued to be the subject of numerous complaints. Based on his failure to improve his performance despite numerous counseling sessions, petitioner's services were terminated on April 26, 1993.

On or about March 11, 1993, prior to his termination, petitioner filed a claim of employment discrimination with the Division. On January 27, 1994, he filed a second charge, alleging retaliatory discharge because of his filing of the earlier charge. The latter complaint was subsequently dismissed for lack of probable cause and, for reasons not relevant here, is the subject of a separate article 78 proceeding, still pending.

On March 15, 1994, the Division held a fact-finding conference, conducted by the Division's investigator, Ms. James, a supervisor, and attended by petitioner, Faranda and Faranda's supervisor, as well as two representatives from Condé Nast's Human Resources Department and Condé Nast's legal counsel. Prior to the conference, on October 12, 1993, and in response to the Division's request, Condé Nast had produced numerous documents relating to petitioner's employment. Petitioner had also produced numerous documents relating to his Condé Nast employment.

At the conference, which lasted several hours, Ms. James thoroughly questioned all of the witnesses as to petitioner's charges of discrimination and retaliatory discharge. Petitioner had every opportunity to controvert their testimony but did not do so. He failed to call any witnesses of his own. Condé Nast produced further documentation, including several personnel files, and later, at Ms. James' request, supplied additional information.

On January 19, 1996, following a review of the evidence, the Division issued a finding of no probable cause to believe that Condé Nast had engaged in unlawful discriminatory practice against petitioner. Condé Nast terminated petitioner's employment, the Division found, because of his failure, despite numerous reprimands, to improve his performance. The Division also noted that petitioner had been replaced by a black employee, that Condé Nast currently employs a significant percentage of black employees in various occupational capacities and that, in 1993, Condé Nast had terminated the employment of various employees of different races. Two months later, petitioner commenced this proceeding seeking to annul that determination. The IAS Court, as noted, granted the petition and remanded the matter to the Division for further investigation, including interviews of petitioner's witnesses.

Where, as here, a determination of no probable cause is rendered without holding a public hearing pursuant to Executive Law § 297 (4) (a), the appropriate standard of review is whether the determination was arbitrary and capricious or lacking a rational basis. (*Matter of Hone v New York State Div. of Human Rights*, 223 AD2d 761, 762; *Matter of Giles v State Div. of Human Rights*, 166 AD2d 779, 780.) The Division "has broad discretion in determining the method to be employed in investigating a claim." (*Matter of Bal v New York State Div. of Human Rights*, 202 AD2d 236, 237, *lv denied* 84 NY2d 805.) As

this Court has held, a determination of no probable cause "will not be set aside unless it is found to be arbitrary and capricious." (*Matter of Albert v Beth Israel Med. Ctr.*, 230 AD2d 695, 697.)

In remanding this matter on the basis of an inadequate investigation, the IAS Court applied an improper standard and indulged in a flawed analysis of the facts. As this record shows, the Division's finding of no probable cause was anything but abbreviated and one-sided. The Division, on a number of occasions, invited petitioner to offer proof and to respond to Condé Nast's representations. Several months after petitioner had filed his claim, the Division invited him to meet with one of its representatives to discuss the claim. At the fact-finding conference conducted by Ms. James, petitioner did not, despite the opportunity to do so, present any witness. In this proceeding he has identified, by name, only one witness, a former employee of Condé Nast, whose testimony would, at best, be of dubious value.[2] Although he mentioned "other vendors", he did not otherwise identify them. Interestingly, he never requested that the Division interview other employees in his department, who could speak with first-hand knowledge of his performance. Viewed against the well-documented case against petitioner based on his performance deficiencies, that the Division's investigator did not contact this one witness hardly renders the investigation abbreviated and one-sided. Thus, petitioner's present claim that the Division failed to interview his witnesses rings hollow.

In any event, as long as the investigation is sufficient and the claimant afforded a full opportunity to present his claims, "[i]t is within the discretion of the [Division] to decide the method or methods to be employed in investigating a claim." (*Matter of Chirgotis v Mobil Oil Corp.*, 128 AD2d 400, 403.) In fact, a finding of no probable cause has been upheld in instances where the Division conducted an investigation, otherwise sufficient, but did not include a fact-finding conference. (*See, e.g., Lee v New York State Human Rights Appeal Bd.*, 111 AD2d 748; *Matter of Taber v New York State Human Rights Appeal Bd.*, 64 AD2d 990.)

Here, as the record indisputably shows, petitioner was afforded a full and fair opportunity to present his case. In remanding the matter for further consideration, the IAS Court

---

2. Petitioner stated that the former employee denied complaining to Faranda about petitioner's work performance.

improperly substituted its own judgment as to the investigative methods to be employed by the Division.

Finally, we note, the Division's finding of no probable cause was rationally based. Petitioner bore the burden of showing probable cause as to the discriminatory acts charged. (*Matter of Shay v City of Elmira*, 108 AD2d 968, 969.) His conclusory allegations fail to demonstrate that his supervisors' repeated warnings as to his job performance and suggestions for improvement were race motivated, especially in light of his replacement by an employee of the same racial background. Absent any proof of unlawful discrimination, the Division properly concluded that there was no probable cause to believe that Cond[6602] Nast had engaged in discriminatory practices in its relationship with petitioner. (*See, Matter of Joslyn v Santaella*, 112 AD2d 305, 306; *see also, Matter of Sedlacek v IBM Corp.*, 108 AD2d 1029, 1030.)

Accordingly, the order of the Supreme Court, New York County (Salvador Collazo, J.), entered on or about September 5, 1996, granting the petition to set aside the determination of the New York State Division of Human Rights to the extent of remanding the matter for further investigation, should be reversed, on the law, without costs or disbursements, the petition denied and dismissed and the determination of no probable cause confirmed.

ROSENBERGER, TOM and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered on or about September 5, 1996, reversed, on the law, without costs or disbursements, the petition to set aside the determination of the New York State Division of Human Rights denied and dismissed, and the determination of no probable cause confirmed.