OPINION OF THE COURT
Peter H. Moulton, J.
In this CPLR article 78 proceeding, petitioner Anneli Bailey *757 seeks to annul a determination of respondent New York State Division of Human Rights (DHR), dated August 10, 2011, finding that there was no probable cause to support petitioner’s claim that respondent Libeco Lagae, Inc. engaged in unlawful employment discrimination based on sex. Libeco cross-moved for dismissal of the proceeding, and the DHR answered, also seeking dismissal. The DHR submitted the administrative record and, in its answer, states that, because petitioner and Libeco “are the real parties in interest, [it] will not actively participate in this matter and is submitting on the record.” (DHR answer 1Í 4.)
The scope of this court’s review of a challenge to an administrative agency’s determination, such as a DHR “no probable cause” finding made after an investigation, is limited. “Where, as here, a determination of no probable cause is rendered without holding a public hearing pursuant to Executive Law § 297 (4) (a), the appropriate standard of review is whether the determination was arbitrary and capricious or lacking a rational basis.” (Matter of McFarland v New York State Div. of Human Rights, 241 AD2d 108, 111 [1st Dept 1998]; see also Matter of Orosz v New York State Div. of Human Rights, 88 AD3d 798 [2d Dept 2011] [proper standard of review when no hearing held is “arbitrary and capricious,” not “substantial evidence”].) “An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts.” (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].)
“The judicial function is exhausted when there is to be found a rational basis for the conclusions approved by the administrative body.” (Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 277-278 [1972] [internal quotation marks and citations omitted]; see Friedman v New York State Div. of Human Rights, 2012 NY Slip Op 31826[U], *3 [Sup Ct, NY County 2012].) “Provided there is some — indeed, any — rational basis or credible evidence to support an administrative determination, the agency’s decision must be upheld.” (Matter of Rivera v New York State Div. of Human Rights, 18 Misc 3d 1133[A], 2008 NY Slip Op 50273[U], *5 [Sup Ct, NY County 2008]; see Matter of Pell, 34 NY2d at 231.)
Further, “a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discre *758 tion.” (Id. at 232 [internal quotation marks and citation omitted]; see Matter of Arrocha v Board of Educ. of City of N.Y., 93 NY2d 361, 363 [1999]; Matter of Gormley v NYS Div. of Human Rights, 2009 NY Slip Op 32461[U] [Sup Ct, NY County 2009].) “If the court finds that the determination is supported by a rational basis, it must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency.” (Matter of Peckham, 12 NY3d at 431; see Matter of Imperial Diner v State Human Rights Appeal Bd., 52 NY2d 72, 79 [1980]; Sullivan County Harness Racing Assn., 30 NY2d at 277-278; Friedman, 2012 NY Slip Op 31826[U], *3; Matter of Olick v D’Alessandro, 31 Misc 3d 1218[A], 2011 NY Slip Op 50718[U] [Sup Ct, NY County 2011]; Stillman v New York State Div. of Human Rights, 2008 NY Slip Op 33115[U], *3-4 [Sup Ct, NY County 2008].)
Moreover, when an administrative agency’s determination “involves factual evaluations in an area of the agency’s expertise and is supported by the record, such [determination] must be accorded great weight and judicial deference.” (Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987]; see Matter of Peckham, 12 NY3d at 431; Matter of Rosario v New York State Div. of Human Rights, 21 Misc 3d 1108[A], 2008 NY Slip Op 52010[U], *4 [Sup Ct, NY County 2008].) The determinations of the DHR “are entitled to considerable deference due to its expertise in evaluating discrimination claims.” (Matter of Camp v New York State Div. of Human Rights, 300 AD2d 481, 482 [2d Dept 2002]; see Matter of Eastport Assoc., Inc. v New York State Div. of Human Rights, 71 AD3d 890, 891 [2d Dept 2010].) Such determinations may not be set aside “merely because the opposite decision would have been reasonable and also sustainable” (Matter of Mize v State Div. of Human Rights, 33 NY2d 53, 56 [1973]; see Matter of Imperial Diner, 52 NY2d at 79; Matter of DiNatale v New York State Div. of Human Rights, 77 AD3d 1341, 1342-1343 [4th Dept 2010]), and courts “must resolve reasonable doubts in favor of the administrative findings and decisions.” (Matter of Town of Henrietta v Department of Envtl. Conservation of State of N.Y., 76 AD2d 215, 224, [4th Dept 1980]; see Matter of Rosario, 2008 NY Slip Op 52010[U], *4.)
The DHR also has broad discretion to decide how to investigate a claim, and, as long as a petitioner has a full opportunity to present her claims, “its determination will not be overturned unless the record demonstrates that its investigation was ‘ab *759 breviated or one-sided.’ ” (Matter of Bal v New York State Div. of Human Rights, 202 AD2d 236, 237 [1st Dept 1994]; see Matter of Pascual v New York State Div. of Human Rights, 37 AD3d 215, 216 [1st Dept 2007]; Matter of Gleason v Dean Sr. Trucking, 228 AD2d 678, 679 [2d Dept 1996].)
In this proceeding, petitioner does not contest the manner in which the DHR investigation was conducted, but asserts that the DHR’s determination contains inconsistencies and inaccuracies, is not supported by the evidence, and fails to address her claim as “sex plus” discrimination.
Petitioner Bailey, who was employed by respondent Libeco from 2001 until she resigned in July 2011, filed a complaint with the DHR, on August 10, 2010, alleging discrimination in the terms and conditions of her employment based on sex, in violation of the New York State Human Rights Law (Executive Law § 296) (NYSHRL). (See complaint, exhibit 2 to petition.) The complaint alleges that, during the time that she worked for Libeco, she received positive reviews, promotions, raises and benefits, until she had children. Petitioner has two children, ages three and five when the DHR complaint was filed, who were born in 2004 and 2007.[1] In February 2009, petitioner’s son was diagnosed with leukemia, and required extended treatment, starting with six months of intensive chemotherapy. Petitioner alleges that throughout the difficult time that she was dealing with her son’s early treatment, her job performance remained “exemplary,” but Libeco “[took] issue with the demands of parenthood,” and discriminated against her, in an effort to force her to resign, because she was the only employee in Libeco’s New York office who had children. (See complaint, exhibit 2 to petition at 1.)
In her complaint, petitioner alleges that Libeco discriminated against her in November 2009, when it demoted her from “sales director” to “customer service manager,” and reduced her salary by 20%, without reducing her responsibilities. The complaint also alleges that Libeco took away her company cell phone, and denied her requests for a Blackberry and/or a laptop computer which would enable her to work away from the office, as circumstances, including her son’s special needs as a cancer patient, warranted. (Id. at 2.)
*760 The DHR conducted an investigation and reviewed evidentiary submissions from the parties. Libeco submitted a written response to the complaint, with supporting evidence, including an affidavit of Kathryn Richardson, vice-president of Libeco and petitioner’s supervisor, and documents, including emails between petitioner and Richardson, copies of petitioner’s performance reviews, and information about the gender, position, and salary of each of Libeco’s five employees.
Libeco denied discriminating against petitioner because of her sex or because she was a mother. It claimed that it treated petitioner better than other employees because of her status as a mother, by providing her with more than the required amount of time and compensation during her maternity leaves, and by providing her with additional paid vacation time and flexibility in her work schedule, when it learned about her son’s illness. (See response to complaint, exhibit 3 to petition at 3-4.) Libeco further asserted that, even when petitioner needed time off without notice, it always approved her requests, and sought to accommodate petitioner’s family situation. (Id. at 3; see Richardson aff, exhibit 4 to petition, 1Í1Í 9-17.)
Libeco also denied that petitioner was demoted, and asserted that, in the fall of 2009, a new sales manager was hired, a position that petitioner was not interested in because it involved extensive traveling, and petitioner’s position was eliminated. According to Richardson, before the new sales manager was hired, she had numerous conversations with petitioner, in which petitioner explained that she could not fully commit to the travel requirements of a sales position until her children were older. (Id. 11 4.) Richardson also attested that Libeco considered letting petitioner go when her position was eliminated, but instead offered her a new customer service position, with a lower salary, in part out of concern for her family’s circumstances. (Id. lili 7, 19, 22.) The title of the new position, “customer service manager,” was changed, after petitioner complained that her responsibilities were comparable to those of employees in the company’s Belgium office whose job title was “account manager.” Libeco also claimed that the duties of her new position were defined to make it easier for petitioner to leave when she needed to attend to her family. (See response to complaint at 4-5; Richardson aff 1Í1Í19-22.) Richardson asserted that petitioner’s requests for a Blackberry or a laptop computer were rejected because her customer service position, which did not involve *761 travel, did not warrant those devices, which are allowed only for traveling sales positions. (Id. K 24.) Richardson also stated that petitioner requested and was allowed access from her home computer, and, although petitioner’s company cell phone was taken from her, she was informed that she would be reimbursed for any work-related calls she made. (Id. 1iH 24, 26.)
Petitioner submitted a rebuttal, in which she acknowledged that Libeco provided her with additional paid leave during her son’s initial cancer treatment, and provided some accommodations during her pregnancies, but she stated that these were consistent with her length of service, dedication and value to the company. (See Bailey rebuttal aff, exhibit 5 to petition, 1i 3.) Petitioner denied that she had any problems with working her scheduled hours, or arriving late and leaving early, as Richardson claimed. (Id. H1Í 4-5; see Richardson aff 1i 12.) She further claimed that her new position required her to perform 90% of her former responsibilities, that the job description submitted by Libeco did not accurately represent her duties, and that Libeco did not identify any legitimate business purpose for changing her job title and reducing her salary. (Id. 1Í1Í 2, 6-7.)
After reviewing the parties’ submissions, the DHR issued its determination and order after investigation on August 10, 2011. The DHR concluded that the evidence did not support petitioner’s allegations of sex discrimination. The DHR found that petitioner was demoted, which Libeco had denied, but it also found that the demotion and salary reduction were based on nondiscriminatory reasons, including petitioner’s inability to meet the travel requirements of a sales position, and the need to reduce costs, although Libeco asserted that cost-cutting was not a reason for petitioner’s change in position. The DHR further found that the denial of petitioner’s request for a Blackberry or laptop computer was based on the legitimate reason that her new position was not one requiring travel, and did not warrant being provided with those devices. Moreover, the DHR pointed to the record which indicates that 60% of the employees were female. In addition, the DHR held “her complaint that she was discriminated against because she has children . . . would be familial status discrimination rather than sex discrimination. Familial status discrimination is beyond the jurisdiction of the Division of Human Rights.”
*762 Contrary to Libeco’s apparent argument that “sex plus” discrimination is recognized only in title VII[2] cases, there is legal authority to support its application to claims brought under the NYSHRL. (See Doyle v Buffalo Sidewalk Cafe, 70 Misc 2d 212, 214 [Sup Ct, Erie County 1972]; Lifranc v New York City Dept. of Educ., 2010 WL 1330136, *11, 2010 US Dist LEXIS 34009, *36 [ED NY, Apr. 6, 2010, No. 07-CV-1109 (KAM) (LB)] [recognizing, and dismissing, “gender plus” claim in case brought under title VII, NYSHRL and NYCHRL], affd 415 Fed Appx 318 [2d Cir 2011]; Timothy v Our Lady of Mercy Med. Ctr., 233 Fed Appx 17, 19 [2d Cir 2007] [“gender-plus” claim, involving mother with small children, considered in claim brought under title VII, NYSHRL and NYCHRL]; see also Back v Hastings on Hudson Union Free Sch. Dist., 365 F3d 107, 118-119 [2d Cir 2004] [finding that “(a)¡though we have never explicitly said as much, ‘sex plus’ discrimination is certainly actionable in a § 1983 case”].)[3] Moreover, claims under the NYSHRL, which requires that its provisions be “construed liberally” to accomplish the remedial purposes of prohibiting discrimination (Executive Law § 300), generally are analyzed under the same standards applicable to claims under title VII. (See Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 ofAFL-CIO, 6 NY3d 265, 270 [2006]; Forrest v Jewish Guild for the Blind, 3 NY3d 295, 305 n 3 [2004]; Ferrante v American Lung Assn., 90 NY2d 623, 629 [1997].) There is, accordingly, no legal basis for finding that “sex plus” discrimination is not actionable under the NYSHRL.
DHR’s determination must be vacated as arbitrary and capricious, and in error of law, and remanded to the agency for further determination. DHR erred in concluding that petitioner’s *763 “complaint that she was discriminated against because she has children . . . would be familial status discrimination rather than sex discrimination. Familial status discrimination is beyond the jurisdiction of the Division of Human Rights.” Regardless of whether the agency lacks jurisdiction over familial status discrimination in the employment context (see Executive Law § 296 [1] [a]), a claim for “sex plus” is within the agency’s jurisdiction because “sex plus” is a form of sex discrimination (see n 3, supra), and sex discrimination is within the agency’s jurisdiction. Because the court cannot say that this error did not affect DHR’s determination of no probable cause, the agency must issue a new determination, and address the “sex plus” claim.
It is adjudged that the petition is granted to the extent that DHR’s determination dated August 10, 2011 is vacated and the matter is remanded to the agency for a new determination (and investigation, if appropriate) in accordance with this decision and order; and it is further ordered that the cross motion is denied.

. Documents submitted to the DHR, including emails addressing the dates of petitioner’s maternity leaves, indicate that her daughter was bom in or around November 2004 and her son was born in or around July 2007.

. Title VII of the Civil Rights Act of 1964 (42 USC, ch 21, § 2000e et seq.).

. “Sex plus,” or “gender plus,” “refers to a policy or practice by which an employer classifies employees on the basis of sex plus another characteristic. In such cases the employer does not discriminate against the class of men or women as a whole but rather treats differently a subclass of men or women.” {Back, 365 F3d at 119 n 7 [internal quotation marks and citations omitted].) As it has been further explained,
“[t]he terminology may be a bit misleading, however, because the ‘plus’ does not mean that more than simple sex discrimination must be alleged; rather, it describes the case where ‘not all members of a disfavored class are discriminated against’ . . . Ultimately, regardless of the label given to the claim, the simple question posed by sex discrimination suits is whether the employer took an adverse employment action at least in part because of an employee’s sex.” (Chadwick v WellPoint, Inc., 561 F3d 38, 43 [1st Cir 2009], quoting Back, 365 F3d at 118.)