## Matter of Stewart v New York State Div. of Human Rights

2025 NY Slip Op 30371(U)

January 27, 2025

Supreme Court, New York County

Docket Number: Index No. 654581/2023

Judge: Shahabuddeen Ally

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:     HON. SHAHABUDDEEN A. ALLY                  PART 16M
                           *Justice*

In the Matter of the Application of

LAKYA STEWART,

                                        Petitioner,

For a Judgment Pursuant to Article 78 of the New York
Civil Practice Law and Rules,

                    -against-

NEW YORK STATE DIVISION OF HUMAN RIGHTS and
METRO NORTH COMMUTER RAILROAD COMPANY,

                              Respondents,

| | |
|---|---|
| INDEX NO. | 654581/2023 |
| MOTION DATE | 12/1/2023 |
| MOTION SEQ. NO. | 001 |

**DECISION & ORDER**

> The following e-filed documents, listed by NYSCEF document number, were read on this motion (Seq. No. 1) to/for **ARTICLE 78 (BODY OR OFFICER):** 1-6, 12-14, 18

In this Article 78 proceeding, petitioner LAKYA STEWART ("Petitioner") seeks judicial review of the Determination and Order After Investigation of respondent NEW YORK STATE DIVISION OF HUMAN RIGHTS ("DHR") finding no probable cause to believe that respondent METRO NORTH COMMUTER RAILROAD COMPANY ("Metro-North"; and, together with DHR, "Respondents") had engaged in an unlawful discriminatory practice in violation of the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law, art. 15. For the reasons discussed below, Petitioner's application is **DENIED**, and the Verified Petition is **DISMISSED**.

## I.     BACKGROUND

Petitioner is an employee of Metro-North. (Verified Pet. (NYSCEF Doc. 1) ¶ 2). On May 24, 2022, Petitioner filed a complaint with DHR charging Metro-North with an unlawful discriminatory practice relating to employment because of disability, race/color, opposed discrimination/retaliation, and sex in violation of the NYSHRL. (*Id.* Ex. 1 (NYSCEF Doc. 2) at 1). Upon investigation and opportunity for review, DHR issued a Determination and Order After

654581/2023 Lakya Stewart v. New York State Division of Human Rights et al.          Page 1 of 7
Mot. Seq. No. 001

1 of 7

Investigation (the "DHR Determination") on July 21, 2023, concluding that its investigation failed to reveal sufficient evidence to support Petitioner's allegation that she was discriminated against by Metro-North. (*Id.* at 3) The DHR Determination informed Petitioner of her right to appeal the determination to the New York State Supreme Court within 60 days. (*Id.* at 4)

By Notice of Petition and Verified Petition, dated September 19, 2023, Petitioner commenced the instant Article 78 proceeding seeking an order granting the following relief:

> [(1)] vacate and reverse Respondent New York State Division of Human Rights' Determination of no probable cause[;] (2) judgment for incidental damages including all past salary lost and benefits lost retroactively; (3) . . . reasonable attorneys' fee, plus costs and disbursements of this lawsuit; [and] (4) such additional relief as this Court may deem just and proper under the circumstances.

(Notice of Pet. (NYSCEF Doc. 6) at 1)

## II. DISCUSSION

### A. Standard of Review

In an Article 78 proceeding a court reviews an agency decision to determine whether it violates lawful procedures, is arbitrary or capricious, or is affected by an error of law. CPLR § 7803(3); *Kent v. Lefkowitz*, 27 N.Y.3d 499, 505 (2016); *W. 58th St. Coalition, Inc. v. City of N.Y.*, 188 A.D.3d 1, 8 (1st Dep't 2020). "This review is deferential for it is not the role of the courts to weigh the desirability of any action or choose among alternatives." *Save America's Clocks, Inc. v. City of N.Y.*, 33 N.Y.3d 198, 207 (2019) (internal quotation marks omitted). "[E]ven if different conclusions could be reached as a result of conflicting evidence," a reviewing court may not substitute its own judgment for that of the agency making the determination. *Partnership 92 LP v. N.Y.S. Div. of Hous. & Community Renewal*, 46 A.D.3d 425, 429 (1st Dep't 2007). "[T]he courts cannot interfere unless there is no rational basis for the exercise of discretion" or "the action is without sound basis in reason . . . and taken without regard to the facts." *Save America's Clocks*, 33 N.Y.3d at 207 (quoting *Pell v. Bd. of Educ. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester Cty.*, 34 N.Y.2d 222, 231 (1974)).

The Human Rights Division has broad discretion in determining the method to be employed in investigating a claim, and its determination will not be overturned unless the record demonstrates that its investigation was abbreviated or one-sided. *Pascual v. N.Y.S. Div. of Human*

654581/2023 Lakya Stewart v. New York State Division of Human Rights et al.          Page 2 of 7
Mot. Seq. No. 001

[* 2]                                          2 of 7

*Rights,* 37 A.D.3d 215, 216 (1st Dep't 2007); *McFarland v. N.Y.S. Div. of Human Rights,* 241 A.D.2d 108, 111 (1st Dept 1998). "Moreover, where . . . the administrative determination involves factual evaluation within an area of the administrative body's expertise and is amply supported by the record, the determination must be accorded great weight and judicial deference." *Rosario v. N.Y.S. Div. of Human Rights,* 21 Misc. 3d 1108(A), at *4 (N.Y. Sup. Ct. N.Y. Cnty. Sept. 15, 2008). "Courts are required to resolve [any] reasonable doubts in favor of the administrative findings and decisions. . . . Where evidence conflicts, issues of credibility are the province of an administrative hearing officer, since the decisions by an Administrative Hearing Officer to credit the testimony of a given witness is largely unreviewable by the courts. . . . [T]he courts may not weigh the evidence or reject the conclusion of the administrative agency where the evidence is conflicting and room for choice exists." *Id.* (internal citations omitted).

**B.      Petitioner's Discrimination Claim**

In her Verified Petition, Petitioner alleges that she was discriminated against based on three incidents, each of which are addressed below.

**i.      *Petitioner's Receipt of Deferred Suspension***

Petitioner states that she was retaliated against due to an email she sent from her Metro-North email account to Amtrak on February 8, 2022. (Verified Pet. ¶ 19) Petitioner states in her email a frustration with Amtrak's refusal to allow her to deadhead[1] from Albany to work via Amtrak train. (*See id.* ¶¶ 20-21) The February 8, 2022 email reads:

> Good Afternoon, I never received a response from you or Ms. Hubbard in regards to resolving this issue concerning your deadheading policy. Someone's personal agenda or beliefs should not get in the way of workplace professionalism. Why does Matthew Losee have an issue me, African American railroad employee deadheading out of Albany? If he's not willing to acknowledge the Amtrak policy and continues to violate me, am I suppose to accept this? This is why I am here trying to seek someone of supervision to resolve this issue Its already uncomfortable to know that I am being singled out and as I keep re-examining myself looking for a reason as it leads back to what I can't change. Yes, I am a railroader that works in operations. Why does that exclude me from deadheading and its important to know what message you want to send other railroaders and what this means going forward?

---

[1] The Meriam Webster Dictionary defines "deadhead" as "one who has not paid for a ticket."

**654581/2023 Lakya Stewart v. New York State Division of Human Rights et al.**                          **Page 3 of 7**
**Mot. Seq. No. 001**

(*Id.* ¶ 21; *id.* Ex. 3 ("Metro-North Position Statement") (NYSCEF Doc. 4), Ex. 15) This email led to a disciplinary action of 60 days. (Verified Pet. ¶ 23)

It is Metro-North's policy that one cannot generate emails that give the impression you are a spokesperson for the company. (*See* Metro-North Position Statement at 7; *id.*, Ex. 13, §§ IV.A.2, IV.B.2) Metro-North's contention was that Petitioner's February 8, 2022 email "jeopardized the Respondent's cooperative relationship with Amtrak by disrespectfully demanding a benefit to which she was not entitled, and because it was sent from her official Metro-North email address, it suggested her misinterpretation of Amtrak policy was supported by the Respondent, thereby violating the applicable computer usage policy." (DHR Determination at 2) Petitioner argues, however, that it is apparent that her February 8, 2022 email was written while acting in a personal capacity and not on behalf of the Metro-North and that the email can only be construed as a "consumer complaint." (Verified Pet. ¶ 22)

The Court finds Petitioner's claim of discrimination based on this incident to be unconvincing. As DHR found, Petitioner offered no supporting evidence of discrimination based on race or gender, "such as comments referencing her protected characteristics or favorable treatment of similarly-situated comparators" (DHR Determination at 3), and her behavior alone was the reason for her discipline.

Petitioner also complained that Joseph Lagana and Kai Petersen, Petitioner's Caucasian, male indirect supervisor and union representative, respectively, were not disciplined for "intimidat[ing] and threaten[ing] her" in response to her communications to Amtrak. Metro-North's contention, however, is that Lagana and Petersen did not intend to intimidate Petitioner but, rather, simply advised her confidentially that she was not entitled to commute to work for free on Amtrak trains by virtue of her Metro-North employment and that her emailing Amtrak could be interpreted as a communication from Metro-North claiming that its employees are entitled to a free commute on Amtrak trains, which has not been agreed to between the railroads. (Metro-North Position Statement at 8)

The Court views Respondent's explanation as legitimate and credible as exhibits 9-12 to the Metro-North Position Statement demonstrate that Petitioner had a history of using her work email account for personal matters. (*See id.*, Exs. 9-12) Moreover, for Petitioner to draw a proper comparison between her discipline and Metro-North's failure to discipline Lagana or Peterson,

she would have had to allege that they engaged in similar misconduct. *See Thompson v. City of N.Y.*, 83 Misc. 3d 1213(A), at *5-6 (N.Y. Sup. Ct. Kings Cnty. June 11, 2024). The Court fails to see the requisite similarity between Petitioner's sending an inappropriate email from a work email account and Lagana's and Peterson's advising an employee of the employer's policy.

The Court finds that DHR's failure to find this incident as pretext for discrimination has a rational basis and thus is not arbitrary and capricious.

### ii. *Petitioner Challenged the Fact that She Needed to Use an Accrued Vacation to Receive Compensation*

The second incident noted by Petitioner in her Verified Petition took place on September 1, 2021, during Hurricane Ida when she was stuck on the Metro-North Train 790 for several hours, awaited a rescue, and worked the remainder of her shift when she arrived. (Verified Pet. ¶ 24) Petitioner alleges that she was falsely accused of not reporting to work yet her credentials from her log entry is recorded in the chief's log on the morning of September 2, 2021. (*Id.*) Petitioner's shift began overnight at 2245 hours on September 1, 2021, and ended at 0645 hours on September 2, 2021. (*Id.*)

For comparative purposes, Petitioner referenced the events of September 2, 2021, when Metro-North changed the work location from Grand Central Terminal to the Early Childhood Center (the "ECC") in North White Plains. (*Id.* ¶ 25) A charter bus supplied by Metro-North was late dropping off employees to the ECC. (*Id.*) Petitioner claims that Metro-North paid employees Doug Martin, Steven McGauly, and Ishmael Johnson without forcing them to utilize vacation days despite their arriving substantially late for their shifts because of the delay in transportation, not because the location changed. (*Id.*) At the same time, however, Petitioner also states that DHR failed to request documents pertaining to whether Martin, McGauly, and Johnson used a vacation or personal day or whether they were paid on their regular pay, when their shifts begin and ended, and when they arrived. (*Id.*) Petitioner claims she was discriminated against because she did not receive regular pay like her male counterparts and because they did not complain previously of discrimination. (*Id.*)

In the DHR Determination, DHR observed that when Petitioner communicated on September 1, 2021, that she would not report for her shift due to the weather, she was permitted to take a paid vacation day despite a provision in the applicable collective-bargaining agreement

requiring eight hours advance notice of absences. (DHR Determination at 2; Metro-North Position Statement at 5) DHR also stated that "none of [Petitioner's] colleagues who did not report to work on September 1 or 2, 2021 were compensated without drawing on their balances of paid time away from the office." (DHR Determination at 2) Further, as Respondents explain, employees that received the bulk of their pay on September 2, 2021, are not comparable to Petitioner: Metro-North's timekeeping records do not indicate that Petitioner reported to work during the shift at issue (September 1, 2021), whereas, the colleagues being paid their full shifts on September 2, 2021, reported to their relocated work site and worked the bulk of their shifts, and, indeed, one of those employees was identified as Black, undercutting Petitioner's claim of discrimination based on race. (*See* Verified Answer (NYSCEF Doc. 12) ¶ 55-56; Metro-North Position Statement at 5-6)

Petitioner also references Jennifer Batterson, a colleague who identifies as white and female, who also reported late and received her full pay. (Verified Answer ¶ 56; Metro-North Position Statement at 6) However, as clarified by Respondent, while Batterson arrived late, she stayed for an additional shift which enabled Metro-North to relieve another employee who had been covering the third shift on overtime. (Verified Answer ¶ 56; Metro-North Position Statement at 6)

The Court finds that Metro-North provided adequate explanations and evidence as to why Petitioner's colleagues were paid for their shifts, while she was required to take a paid vacation day. Therefore, the Court finds that DHR's failure to find this incident as pretext for discrimination has a rational basis and thus is not arbitrary and capricious.

### iii. *Petitioner's Complaint that She was Discriminated Against Based on Her Disability*

Finally, Petitioner claims that she was discriminated against based on her disability because she was required to pass a typing test to obtain a promotional position as a Rail Traffic Controller Assistant, while another male, Caucasian employee purportedly was permitted to perform the duties of a Rail Traffic Controller Assistant without being required to pass a typing test. (Verified Pet. ¶¶ 27-28)

However, evidence gathered during the investigation failed to reveal Petitioner was denied a reasonable accommodation for her disability as she was provided with voice recognition software that enabled her to obtain a Rail Traffic Controller Assistant position. (DHR

**654581/2023 Lakya Stewart v. New York State Division of Human Rights et al.**      **Page 6 of 7**
**Mot. Seq. No. 001**

Determination at 3) In fact, Petitioner does not dispute that she withdrew an earlier complaint to the DHR regarding typing test requirement in February 2016 upon her promotion to a Rail Traffic Controller Assistant position. (Metro-North Position Statement at 2)

Accordingly, the Court cannot conclude that Respondents' finding that there was insufficient evidence to support a discrimination claim was arbitrary or capricious and, therefore, Petitioner's Article 78 application must be denied.

Accordingly, it is hereby:

**ORDERED and ADJUDGED** that the Verified Petition and Notice of Petition (Seq. No. 1) are **DENIED**, and this proceeding is **DISMISSED**; and it is further

**ORDERED** that Respondents shall serve a copy of this Decision and Order upon Petitioner and upon the Clerk of the General Clerk's Office with notice of entry within twenty (20) days thereof; and it is further

**ORDERED** that service upon the Clerk of Court shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (654581/2023);[2] and it is further

**ORDERED** that any requested relief not expressly addressed herein has been considered and is denied; and it is further

**ORDERED** that the Clerk shall mark Motion Sequence No. 1 decided in all court records; and it is further

**ORDERED** that the Clerk shall mark this proceeding disposed in all court records.

This constitutes the decision and order of the Court.

| January 27, 2025 | | | SHAHABUDDEEN A. ALLY, A.J.S.C. | |
|---|---|---|---|---|
| **DATE** | | | | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| APPLICATION: | | GRANTED | X DENIED | GRANTED IN PART | OTHER |
| CHECK IF APPROPRIATE: | | SETTLE ORDER | | SUBMIT ORDER | STAY CASE |
| | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

---

[2] The protocols are available at https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/Efil-protocol.pdf.

654581/2023 Lakya Stewart v. New York State Division of Human Rights et al.                   Page 7 of 7
Mot. Seq. No. 001