Jasen, J.
The issue presented here is whether the New York City Civil Service Commission acted arbitrarily or capriciously in adopting a resolution creating two different classes of Oilers in city employment.
Petitioners-respondents were employed as Oilers in sewage treatment plants of the City of New York, Department of Public Works, until March 10, 1964, when the City Civil Service Commission adopted a resolution which reclassified the title of Oiler into two new titles of Oiler (Portable) and Oiler (Stationary), and continued the title of Oiler for incumbents then in service.
In 1965, the Oilers in the City Sanitation Department were reclassified to the new title of Oiler (Portable) and petitioners-respondents were reclassified as Oilers (Stationary). The Oilers (Portable), since their reclassification, received about $1.50 an hour more than the Oilers (Stationary), whose wage rate generally corresponds to the original class of “ Oiler ”.
After the Oilers in the Sanitation Department were reclassified to the title of Oiler (Portable), petitioners instituted this article 78 proceeding to annul the determination of the Civil Service *154 Commission which eliminated the classification of Oiler and created the two new titles of Oiler (Portable) and Oiler (Stationary) and to have themselves reclassified with the higher wage category.
The trial court found that there was no abuse of discretion in creating the classifications and that there was a rational basis upon which the Civil Service Commission could refuse to reclassify petitioners to the title of Oiler (Portable). On appeal, the Appellate Division reversed, finding there was no rational basis for the distinction made between the two groups of city-employed Oilers and ordered the petitioners reclassified as Oilers (Portable).
The majority of the Appellate Division stated that the evidence supported a conclusion that the petitioners had the same qualifications and performed essentially the same duties as Oilers in the Department of Sanitation. They went on to say that, even if there were a greater hazard involved in the work done by the Portable Oilers, and the court did not so find, that was not the basis upon which the classification was made. The court referred to testimony by the Director of Examination of the Civil Service Commission, to the effect that the only reason the wage differential was established was because rates in private industry were based upon whether the employees were working in the construction industry or in a stationary plant. The court found that similar equipment was worked upon by city-employed Oilers, whatever their category, although the location where the work was performed was different. Admittedly, there was a distinction in private industry between Portable and Stationary Oilers, but the court held that the factors supporting a higher rate of pay for Portable Oilers in private industry, such as the nature of the employer’s, business (construction) and the seasonal aspect of the employment, were not present here.
We affirm the Appellate Division’s determination that there was no substantial difference between the duties and qualifications of petitioners and those of Oilers employed in the Department of Sanitation. It is not disputed that the function of oiling is the same whether it is performed on stationary or on portable equipment. However, it is claimed that despite the fact that *155 both groups perform the same duties of oiling machinery, there are differences in the hazards and circumstances in which the work of the two groups is performed which warrant classifying them into separate categories.
For example, Oilers in private industry were divided into two different branches, namely the Stationary and Portable, with the Stationary branch having ‘ ‘ jurisdiction over powerhouses and power plants in buildings, offices, factories, dairies, breweries and public powerhouses ’ ’; and that the Portable branch ‘ would refer essentially to the construction industry and its allied suppliers, material yards, transporting construction materials, etc.” This distinction, appellants claim, also applies to city-employed Oilers. They contend that Oilers in the Department of Public Works perform work comparable to that of Stationary Oilers in private industry and that Oilers in the Department of Sanitation perform work comparable to that of Portable Oilers in private industry, thus creating a basis for two separate Civil Service titles.
However, we affirm the Appellate Division’s finding that the factors supporting a distinction in private industry between Portable and Stationary Oilers are not present between the two groups of city-employed Oilers.
Historically, the difference between Portable Oilers and Stationary Oilers in the private sector was one of industry. The Portable Oilers chiefly worked in the construction industry, whereas the Stationary branch primarily maintained powerhouse-power type equipment. The function of oiling is the same in both categories, but the Oilers in private industry received a higher wage due to the seasonal nature of employment in the construction industry and the fact thát the work was subject to greater hazards. The city-employed Portable Oilers, however, are not seasonal, but enjoy the same full-time employment as the other city Oilers. Additionally, there is no testimony that the work performed by the city Portable Oilers is more hazardous than that of the other city Oilers. Proof was only offered that it is more hazardous to work on portable equipment m the construction industry. Since these city Portable Oilers are not in the construction industry, there is no evidence to support the hypothesis that they have a more hazardous occupation than the *156 other city Oilers. Although some of the equipment they oil is movable, it is conceded they do not oil it when it is in motion. Furthermore; the job specifications do not differentiate between the new titles of Oiler (Portable) and Oiler (Stationary) on the basis of their hazards, but on the basis of the types of equipment — portable or stationary — on which oiling is performed.
We do not agree, however, with the Appellate Division’s determination that the Civil Service Commission must reclassify the petitioners to the higher-paying Oiler (Portable) position. This relief would only have been proper if it had been found that the differences existing in private industry were applicable to city Oilers .and that the petitioners were performing work comparable to Portable Oilers in private industry.
The factors supporting a higher rate of pay for Portable Oilers in private industry, such as the seasonal nature of the employment, were not present here. The inescapable inference from this is that the duties of city Oilers are more comparable to those of Stationary Oilers in private industry than they are to those of Portable Oilers in private industry.
After the Appellate Division found that there was no substantial difference between the duties and qualifications of petitioners and those of Oilers employed in the Department of Sanitation, it should merely have directed that the reclassification resolution of the Civil Service Commission establishing the distinction between city-employed Oilers be vacated, thereby bringing to an end the inequality existing between the petitioners and the Sanitation Department Oilers.
Accordingly, the order of the Appellate Division is modified to vacate the reclassification resolution of the City Civil Service Commission establishing the distinction in title between the petitioners and the Sanitation Department Oilers, and as so modified, affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Gibson concur.
Order modified in accordance with the opinion herein and, as so modified, affirmed, without costs.