Bubke, J.
In this article 78 proceeding, the issue is whether the State Harness Racing Commission (hereafter Commission) had the requisite power to condition petitioner’s racing dates with the prohibition that the petitioner not conduct its racing programs in conjunction with television.
The Appellate Division, Third Department, unanimously affirmed without opinion a judgment of the Supreme Court. Sullivan County, nullifying the Commission’s determination which conditioned the special license granted to petitioner with the proviso that there be no televising of its racing events. On January 5,1972, at the opening of the January session of court, we granted leave to appeal.
The operative facts are as follows. By an amendment to section 38 of the Pari-Mutuel Revenue Law (L. 1940, ch. 254, as amd.) the Legislature altered the period during which harness racing could be conducted in New York (L. 1971, ch. 1095). The amendment provided: “ In counties having a population of two hundred fifty thousand or less, the state harness racing commission may, however, permit the holding of one or more harness horse race meetings and the conduct of harness races at such meetings on a day or days not during such period if the commission is satisfied that a special occasion makes the holding of such meetings and the conduct of such races on such day or days proper or necessary; but in no event shall such meetings or races be held or conducted on the twenty-fifth day of December.” The section already provided that “ Such power and right, however, shall not incliMe the right to conduct parimutuel betting at such harness horse race meetings except pursuant to license granted by the state harness racing commission pursuant to this act.” Pursuant to this change in permissible racing dates, on August 18, 1971, petitioner Sullivan County Harness Racing Association (hereafter Monticello) applied for *275 the following dates: December 15,1971 through January 8,1972. On September 8, 1971, the Commission granted the request, finding that the special winter carnival in the community in which Monticello is located was a special occasion which warranted the approval of the application.
Thereafter, on October 6, 1971, petitioner Monticello and the New York City Off-Track Betting Corporation (hereafter OTB), after protracted negotiations, entered into a contract by which OTB agreed to televise one live race each night from December 15, 1971 to January 8, 1972. The parties further agreed that OTB would have television rights to the end of the winter meet of January, 1974. Simultaneously, OTB and Monticello entered into a second agreement which provided for the interfacing of bets from off-track betting with those placed at Monticello into a single pari-mutuel pool.
Upon the Monticello-OTB contract becoming public, Yonkers and Roosevelt Raceways petitioned the Commission to review its decision of September 8,1971 which had granted Monticello’s request for the additional racing dates. A full hearing was held before the Commission on October 14, 1971, and on November 18, 1971, the Commission rendered its decision conditioning Monticello’s license so that it not conduct its racing programs in conjunction with any television broadcasts.* Petitioners herein (OTB and Monticello) thereafter commenced this proceeding in Supreme Court, Sullivan County, to challenge the Commission’s determination. Special Term granted judgment annulling the determination and the Appellate Division, Third Department, unanimously affirmed without opinion. Special Term concluded that the condition that the Commission sought to impose was beyond its powers, reaching this conclusion after an analysis of the reasons proffered by the Commission for its determination.
On appeal, appellants (the Commission and the race tracks) raise two questions. First, they argue that the Commission had the power to condition licenses forbidding televising of the races in the furtherance of the ‘1 best interests of racing gen *276 erally Second, assuming that the requisite power existed, appellants contend that the determination of the Commission rested upon a “ reasonable basis ” and should not be judicially disturbed.
In our view, the Commission had the power to so condition Monticello’s license and upon reviewing the record, it cannot be said that the determination was so arbitrary or capricious as to warrant annulment. The record reveals that the Legislature lawfully delegated its power, that sufficient standards were delineated in the enabling legislation and that the Commission’s determination rested upon a rational basis. Therefore, the order of the Appellate Division and judgment of the Special Term is reversed and the petition dismissed.
We reach this conclusion since the Legislature conferred upon the Commission broad regulatory powers over the harness racing industry. For example, pursuant to section 40 of the PariMutuel Revenue Law, the Commission is empowered to issue licenses if ‘ ‘ the public interest, convenience or necessity will be served thereby and a proper case for the issuance of such license is shown consistent with the purposes of this act and the best interests of racing generally ’ ’. The act also provides that the license may be issued “ upon any other condition that the state harness racing commission shall determine to be necessary or desirable to insure that the public interest, convenience or necessity is served” (§ 40, subd. 2; emphasis supplied). Furthermore, under its general powers (§ 36) “ The commission may adopt rules and regulations not inconsistent with this act to carry into effect its purposes and provisions and to prevent circumvention or evasion thereof.” These legislative provisions delegate to the Commission broad power to condition licenses with requirements that the Commission deem to be in the best interests of the harness racing industry.
The Commission acted pursuant to this broad delegation of power. It is a well-established principle of administrative law that to prevent an unlawful delegation of power, it is incumbent upon the legislative authority to set forth standards to indicate to the agency the limits of its power, the specificity of the standards being relative to the nature of the program. (Lichter v. United States, 334 U. S. 742, 785; Paterson v. University of State of N. Y., 14 N Y 2d 432, 440; Matter of City *277 of Utica v. Water Pollution Control Bd., 5 N Y 2d 164, 169; Matter of Galzadilla v. Dooley, 29 A D 2d 152; 1 Am. Jur. 2d, Administrative Law, § 113.) In the instant enabling legislation, the Commission is to issue licenses only when it is satisfied that the ‘1 public interest, convenience or necessity ’ ’ will be served and the issuance of the license will be in the ‘1 best interests of racing generally ”. These standards have been previously judicially determined to suffice. (F. C. C. v. RCA Communications, 346 U. S. 86, 90; National Broadcasting Co., v. United States, 319 U. S. 190, 225; New York Cent. Securities Corp. v. United States, 287 U. S. 12, 24-25; Matter of Dougherty v. State Harness Racing Comm., 309 N. Y. 992; Matter of Calzadilla v. Dooley, 29 A D 2d 152, supra; 1 Am. Jur. 2d, Administrative Law, § 120, supra.) The Legislature in our view properly delegated to the Commission very broad power to regulate the harness racing industry:
Prior to considering the appellants’ second contention, we digress to briefly consider whether the Commission lawfully reconsidered Monticello’s application for the additional racing days. The authorities are in agreement that upon a change in circumstances (here the Monticello-OTB contract after the issuing of the license constituted such a change) or new information, an agency may reconsider and alter a prior determination. (Matter of Evans v. Monaghan, 306 N. Y. 312, 323-326; Matter of Drew v. State Liq. Auth., 2 AD 2d 75, affd. 2 N Y 2d 624; 2 Davis, Administrative Law, §§ 18.08,18.09; 1 N. Y. Jur., Administrative Law, §§ 157-158.) It follows then that it was perfectly permissible for the Commission to reconsider the Monticello application.
Having previously concluded that the Commission possessed the requisite power to condition Monticello’s license, we turn now to the question of whether the Commission had a reasonable basis to condition the license with the prohibition on television. Cases are legion which illustrate the principle that our review ends when a rational basis is found for the agency determination— “ ‘ The judicial function is exhausted when there is to be found a rational basis for the conclusions approved by the administrative body. ’ ” (Rochester Tel. Corp. v. United States, 307 U. S. 125, 146; Mississippi Val. Barge Co. v. United *278 States, 292 U. S. 282, 286-287; Matter of Howard v. Wyman, 28 N Y 2d 434, 438; Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108.) Stated differently, if the acts of the administrative agency find support in the record, its determination is conclusive (Matter of Swalbach v. State Liq. Auth., 7 N Y 2d 518, 526) and the test of judicial review is to determine whether the agency acted arbitrarily or capriciously (Matter of Fink v. Cole, 1 N Y 2d 48, 53). Of course, in reviewing administrative determinations, a court may not overturn an agency’s decision merely because it would have reached a contrary conclusion (1 N. Y. Jur., Administrative Law, § 197, pp. 643-648, supra). It was this canon of administrative law that Special Term did not follow in nullifying the Commission’s determination.
In its decision the Commission detailed at least four reasons why Monticello’s license should be conditioned with the television ban. The Commission was of the opinion that in view of the Monticello-OTB contract, Monticello would be racing in an area not designated in its certificate of incorporation, circumventing the 25-mile restriction contained in the law and thereby violating the spirit and intent (if not the letter) of the law. Secondly, the Commission felt that Monticello and OTB would be directly competing with Yonkers and Roosevelt in a manner not envisioned by the OTB legislation. Thirdly, the Commission had strong feelings that the agreement presented a harmful threat to the State racing industry in general. Fourthly, the Commission indicated that through television, Monticello would be violating the ban on racing during the Christmas-New Year holiday season in counties with over 250,000 population. Whether one agrees with the soundness of the reasons offered by the Commission, it cannot be said that its determination lacked a rational basis, which is the governing standard when reviewing agency determinations (supra). Yet Special Term went through a point-by-point analysis of the Commission’s decision, each time reaching a different conclusion. In this manner, Special Term erred in holding that the Commission exceeded its authority and declaring its action to be without effect.
In reviewing the statutory provisions relating to racing, harness horse racing, pari-mutuel revenue and off-track betting, *279 Special Term overlooked the broad discretion which the Legislature intended to confer upon the Commission in regulating harness racing in New York. While concededly there is no specific provision which prohibits a harness race track from contracting to televise its races (there were previous telecasts without the Commission’s intervention), such a narrow interpretation of the delegation of power which is cast in the terms of ‘4 best interests of racing generally ’ ’ and 4 4 public interest, convenience or necessity ” would be unreasonable. By using such all-encompassing terms, the Legislature obviously intended to confer upon the Commission broad regulatory power over harness racing tracks so as to ensure the continued viability of the harness racing industry. We just add this note: Neither our decision today nor the Commission’s determination precludes televising of harness horse racing in the future upon a finding by the Commission that such televising will not be deleterious to the industry.
In sum, we conclude that the Commission had the requisite power to condition the issuance of the license to Monticello with the proviso that there be no television and in so conditioning the license, there was a rational basis for the determination.
Accordingly, the order of the Appellate Division and the judgment of Special Term should be reversed and the determination of the Commission should be confirmed.
Chief Judge Fuld and Judges Scileppi, Bergan and Gibson concur with Judge Burke ; Judges Brbitel and Jasen dissent and vote to affirm on the opinion at Special Term.
Order reversed, without costs, and the determination of the Commission confirmed.

 Upon a request by OTB for a declaratory ruling, the Federal Communications Commission ruled that live coverage of the final race run at a track would not violate established Federal policy. (FCC Release No. 71-1251 [Dec. 17, 1971].)