[833 NE2d 228, 800 NYS2d 85]

In the Matter of JAMES HUGHES et al., on Behalf of Themselves and All Other Similarly Situated Members of the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14-14B and LOCAL 15, 15A, 15C, 15D, AFL-CIO, Respondents, et al., Intervenors, v JOHN J. DOHERTY, as Commissioner of the New York City Department of Sanitation, Appellant.

Argued May 4, 2005; decided June 16, 2005

### POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Dona B. Morris, Francis F. Caputo* and *Blanche Greenfield* of counsel), for appellant. I. Petitioners are not entitled to any relief because the City of New York's actions respecting the layoffs of the Department of Sanitation employees at the Fresh Kills landfill were in all respects lawful, reasonable and proper. In particular, the City's determination that the title of oiler was not a lower grade in direct line of promotion to the tractor operator or crane operator titles, as pertinent to establishing the preferred list under Civil Service Law § 81, was a proper exercise of discretion and was not arbitrary or capricious. (*Matter of City of New York v City Civ. Serv. Commn.,* 60 NY2d 436; *Matter of Sullivan County Harness Racing Assn. v Glasser,* 30 NY2d 269; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Matter of Johnson v Joy,* 48 NY2d 689; *Matter of Howard v Wyman,* 28 NY2d 434; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Matter of Pagano v New York State Civ. Serv. Commn.,* 170 AD2d 733; *Matter of Piekielniak v Axelrod,* 92 AD2d 968; *People ex rel. Schau v McWilliams,* 185 NY 92; *Matter of Wirzberger v Watson,* 305 NY 507.) II. The courts below abused their discretion by effectively amending the petition to add a time-barred claim when they reached out to overrule the line of promotion determinations in effect for almost three decades although petitioners had not directly challenged those determinations as arbitrary and capricious in their pleadings. (*New York City Health & Hosps. Corp. v McBarnette,* 84 NY2d 194; *Matter of Lubin v Board of Educ. of City of N.Y.,* 60

NY2d 974; *Matter of Edmead v McGuire,* 67 NY2d 714; *Mundy v Nassau County Civ. Serv. Commn.,* 44 NY2d 352; *Rosenthal v City of New York,* 283 AD2d 156; *Matter of Federation of Mental Health Ctrs. v DeBuono,* 275 AD2d 557; *Matter of New York State Rehabilitation Assn. v State of N.Y., Off. of Mental Retardation & Dev. Disabilities,* 237 AD2d 718; *Matter of Stearns v Office of Ct. Admin.,* 260 AD2d 900; *Matter of Lacosse v McCauley,* 229 AD2d 890; *Sutherland v Village of Suffern,* 139 AD2d 728.)

*Brady McGuire & Steinberg, P.C.,* Hastings-on-Hudson (*James M. Steinberg* of counsel), for respondents. I. Both the trial court and Appellate Division properly applied the correct standard of review based upon the testimony proffered at the hearing and reviewed in the appellate record. (*Matter of City of New York v City Civ. Serv. Commn.,* 60 NY2d 436; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Matter of Canava v Keyes,* 62 AD2d 997; *Matter of Chapin v Schechter,* 23 Misc 2d 190; *Matter of Walters v Clark,* 53 AD2d 1012; *Matter of Wirzberger v Watson,* 305 NY 507.) II. The lower courts properly found that respondent-appellant failed to articulate a rationale basis why petitioners-respondents were supposedly not entitled to fill positions held by provisional oilers. (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Matter of Gavigan v McCoy,* 37 NY2d 548; *Matter of McDermott v New York State Off. of Mental Health,* 195 AD2d 932; *Matter of Jones v Carey,* 55 AD2d 260; *Abbott v City of Poughkeepsie,* 98 Misc 2d 601; *Matter of Sullivan County Harness Racing Assn. v Glasser,* 30 NY2d 269; *Matter of Morrison v Hoberman,* 26 NY2d 150; *Matter of Hedeman v County of Dutchess,* 234 AD2d 294; *Matter of Cahill v Casey,* 180 AD2d 680; *Matter of Pesce v Reuter,* 262 AD2d 648.) III. The Appellate Division properly found that respondent-appellant waived its right to raise the statute of limitations defense. (*Szigyarto v Szigyarto,* 64 NY2d 275; *Reilley v City of New York,* 273 App Div 1014, 298 NY 710; *Faburn v Dimon,* 20 App Div 529; *Rosenthal v City of New York,* 283 AD2d 156, 97 NY2d 654; *Matter of Lubin v Board of Educ. of City of N.Y.,* 60 NY2d 974; *Matter of Martin v Ronan,* 44 NY2d 374; *Matter of Edmead v McGuire,* 67 NY2d 714; *Sutherland v Village of Suffern,* 139 AD2d 728; *Matter of Stearns v Office of Ct. Admin.,* 260 AD2d 900; *Matter of Lacosse v McCauley,* 229 AD2d 890.)

**OPINION OF THE COURT**

CIPARICK, J.

The sole issue before this Court is whether the New York City Department of Sanitation (DOS) acted irrationally in determining that the title "oiler" is not in the direct line of promotion to the job titles "crane operator" and "tractor operator" when it refused to allow laid-off DOS crane and tractor operators to replace provisional oilers. We conclude that DOS, through the New York City Department of Citywide Administrative Services (DCAS), acted rationally and within its authority, and we reverse the order of the Appellate Division and dismiss the petition.

James Hughes and Joseph Konczynski commenced this CPLR article 78 proceeding on behalf of themselves and similarly situated members of International Union of Operating Engineers Local 14-14B and Local 15, 15A, 15C, 15D, AFL-CIO[1] (collectively petitioners) against John J. Doherty as DOS Commissioner. Among other relief, the petition sought a recision of layoffs, back pay and reassignment to their former positions.

Petitioners were employed by DOS at the Fresh Kills landfill in Staten Island. In 1996, the State Legislature declared that Fresh Kills would be prohibited from accepting solid waste after January 1, 2002. Although the landfill effectively ceased operations in early 2001, the site was briefly reopened when it became an integral part of the post-September 11 recovery operation. However, after the recovery operation slowed down, the facility began to downsize.

The titles targeted for layoffs included crane and tractor operators. Prior to the layoffs, DCAS reviewed the proposed layoffs to determine if anyone was eligible for special transfers or whether there was another way to salvage the positions. Of the 12 crane operators at Fresh Kills, one was retained on site and the other 11 were scheduled for layoffs after it was determined that there were no other vacant or provisional crane operator titles. Of the 71 permanent tractor operators, 14 of the most senior operators were retained by DOS and six were transferred to other city agencies. The remaining 51 were also subject to layoff. On December 6, 2002, the layoffs were implemented.

---

1. Local 333, United Marine Division, ILA, AFL-CIO was permitted to intervene on behalf of displaced launch operators. Its claims, however, were dismissed by order of Supreme Court and are not the subject of this appeal.

Petitioners argued that the position of oiler falls within the direct line of promotion for tractor and crane operator or, in the alternative, that the positions should be considered comparable for layoff purposes. Supreme Court rejected the alternative argument but agreed with petitioners that the position of oiler was a "de facto" lower grade title in direct line of promotion for both crane operator and tractor operator. The court stated, "[t]he decision not to consider the oiler as such has no basis in reason or fact." Supreme Court directed that the laid-off crane and tractor operators be placed on a preferred list and that they replace individuals holding provisional oiler positions pursuant to Civil Service Law § 81. The Appellate Division affirmed, holding that the agency acted arbitrarily and capriciously in not finding a direct line of promotion from oiler to crane and tractor operators. We granted leave to appeal and now reverse.

Civil Service Law § 81 provides that after abolition of a position, the individuals who are subject to layoffs are placed on a preferred list. That list is used to fill vacancies "first, in the same or similar position; second, in any position in a lower grade in line of promotion; and third, in any comparable position" (Civil Service Law § 81 [1]). As no vacant or provisional tractor or crane operator positions were available, the issue was narrowed to whether there existed a lower grade in line of promotion to crane operator or tractor operator, or whether there were any comparable positions.

A review of the respective job title classifications issued by DCAS reveals that since 1974 the primary duties of an oiler have been described as "the lubrication of power plant, pumping and/or construction equipment." There is a multiple choice examination for the position and the direct lines of promotion are listed as only stationary engineer and electric stationary engineer, not crane or tractor operator.

A tractor operator, on the other hand, is described as one who "operates and does minor maintenance on refuse haulers . . . at landfills and other projects of the City of New York." A practical examination is required and the title states that no current direct line of promotion in either direction exists for the title. The crane operator is listed as one who "operates, maintains and makes such minor repairs as are necessary to ensure continued operation of cranes." A practical examination is also required for this title and although there is no direct line of promotion to the position of crane operator, there is a promotional line leading to supervisor crane operator.

When promotional series exist—that is, certain job titles are in a line of promotion to other job titles—the higher title is open only to employees being promoted from the lower grade job, based on a required promotional examination. Otherwise, jobs are filled by a competitive examination open to everyone who fits the specified qualifications. Here it is undisputed that the job title "oiler" is not currently classified as a lower grade title in the line of promotion to tractor or crane operator. The positions of crane operator, tractor operator and oiler are all based on open competitive examinations. The relevant aspects of the present classification system have been in place for over 30 years. Indeed, petitioners have benefitted from the very job classification system whose propriety they now seek to challenge, inasmuch as the open competitive system has enabled those who were not then employed by the City as oilers to apply for jobs that would otherwise have been closed to them.

Nevertheless, Supreme Court found that the oiler title was a "de facto" lower grade title in the line of promotion to crane and tractor operator, based primarily on the prior classification of a now superseded job title. The court determined that DCAS had failed to establish that the elimination of the oiler title from the relevant line of promotion after reclassification in 1974 was rational and therefore overruled the agency's determination. That was error.

DCAS maintains both policy-making authority and functional responsibility for civil service matters in New York City (see NY City Charter § 813; see also Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 442 [1983]). As an administrative agency, DCAS is afforded discretion in its actions. Accordingly, judicial review of DCAS's classification system and determinations are limited to whether there was a rational basis for the agency's conclusion (see CPLR 7803 [3]; see also Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 277-278 [1972]). Unless the administrative agency's determinations were arbitrary or capricious, a court should not undermine its actions (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).

We hold that DCAS acted within its discretion in finding that an oiler was not in the direct line of promotion to the position of crane operator or tractor operator. Furthermore, the fact, relied on by Supreme Court, that the 1964 classification for

"portable oiler"[2] listed crane engineman and tractor operator as promotional lines does not make DCAS's analysis irrational. It is within the agency's power to make and adjust any such classifications (*see generally* Civil Service Law § 52). Indeed, there were several rational bases on which DCAS could have decided that the oiler job should not be in the direct line of promotion to tractor or crane operator.

First, in investigating petitioners' grievances, DCAS asked an engineer to evaluate the roles of the tractor and crane operators compared to that of the oilers. The engineer found that, as a class, the duties and skills of each title do not entirely overlap and thus DCAS reasonably concluded that it would be in the City's interest not to extend a promotional line where one did not then exist. If the agency had permitted the tractor and crane operators to displace provisional oilers, petitioners would have been assigned to the oiler positions based solely on seniority, with no consideration given to their actual skills. In addition, petitioners would have taken on the new positions without the benefits and safeguards of a probationary period.

Second, by declining to place oilers in the direct line of promotion to crane or tractor operators, the City opened up the operator jobs to competitive application—not limited to current oilers—thereby expanding the pool of skilled applicants available to fill the positions to include those noncity employees who might be most skillfully able to handle the machinery. Further, even if oilers had once been in the direct line of promotion, nothing prevented DCAS from later reevaluating the situation and acting to fulfill its responsibility to provide the City with the most qualified and skilled personnel.

Third, the superseded "portable oiler" job title, which had been in the direct line of promotion to crane engineman and tractor operator, specified in its job description that among the typical tasks to be performed by a worker serving in this title, was that the employee "[m]ay drive truck cranes." When the specifications were redrawn for the reunified oiler title in 1974, however, there was no reference to any duties, responsibilities or typical tasks that involved the operation or driving of any portable construction equipment.

---

2. In 1964 the oiler title was split into two titles, portable oiler and stationary oiler. We invalidated the title change in *Matter of Morrison v Hoberman* (26 NY2d 150 [1970]). Subsequently, the titles were reclassified as one in 1974. In doing so, however, DCAS also removed the promotional line to crane engineman and tractor operator that had existed in 1964 for portable oiler.

In rejecting the rationality of DCAS's approach to establish lines of promotion, Supreme Court improperly substituted its judgment for the expertise of the agency. "The judicial function is exhausted when there is to be found a rational basis for the conclusions approved by the administrative body" (*Matter of Sullivan County*, 30 NY2d at 277-278 [citations omitted]). DCAS should be afforded discretion in the performance of its duties, and the classification system at issue was implemented and followed rationally. DCAS's failure to find a line of promotion from oiler to crane and tractor operators was neither arbitrary nor capricious, but well reasoned in light of the actual roles of the titles and the public policy encouraging competitive and qualified personnel.

We need not reach the issue of whether DOS properly raised a statute of limitations defense.

Accordingly the order of the Appellate Division should be reversed, with costs, and the petition dismissed.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order reversed, etc.