OPINION OF THE COURT
Henry F. Zwack, J.
Petitioner, Michael W. Carney, filed this CPLR article 78 petition seeking a determination that the respondent New York State Department of Motor Vehicles (DMV), and its Commissioner Barbara J. Fiala, abused its discretion and failed to perform a duty enjoined upon it by law and in violation of petitioner’s due process and equal protection rights. Petitioner argues this abuse of discretion and violation of petitioner’s rights occurred as a result of the DMV’s improper and illegal adoption of administrative regulations which violate his constitutional rights, and application of these new regulations retroactively, not prospectively, to petitioner’s application for relicensure. Because of the claimed unconstitutional, arbitrary and illegal acts of the DMV petitioner seeks an order directing the DMV to grant his application for re-licensure, or, alternatively, directing it to review his application under the regulations which were in existence at the time of his most recent conviction or revocable offense.
Petitioner pleaded guilty on May 4, 2011 to driving while intoxicated (Vehicle and Traffic Law § 1192 [2]), was sentenced to probation, and had his driver’s license revoked for six months. *676 In the summer or early fall of 2012,[1] petitioner applied for a New York State driver’s license. On September 25, 2012, the DMV amended 15 NYCRR 136.5 (a) (3) and (b) (1) to effect a ban on re-licensure for individuals with five or more alcohol or drug related driving convictions or incidents in their lifetime. In a determination dated January 9, 2013, the DMV denied petitioner’s application based upon a lifetime review of his driving record, which revealed six alcohol or drug related incidents or convictions.[2] 3*The DMV concluded that he was a “persistently dangerous driver,” finding that his driving record suggests his serious disregard for the safety and welfare of other users of the highway. Petitioner appealed, and the determination was upheld.[3]
The petition sets forth seven causes of action. The first cause of action alleges that the DMV violated the separation of powers doctrine by enacting regulations as a direct result of the legislative failure to enact them, thereby usurping its powers. Petitioner also argues that the new regulations were impermissibly applied ex post facto to his application, thereby violating his due process rights. As a second cause of action, petitioner argues that the DMV purposefully delayed his application for re-licensure with the express purpose of subjecting him to the amended regulations.
As his third cause of action, petitioner argues that the amended regulations conflict with the existing statutory authority within the Vehicle and Traffic Law and are therefore invalid. The fourth cause of action alleges that the DMV exceeded its rule-making authority when it enacted the new regulations. For his fifth cause of action, petitioner claims that application of the amended regulations results in unreasonable, arbitrary, capricious determinations because they cannot be applied fairly and consistently.
For his sixth cause of action, petitioner cites a violation of his equal protection rights, inasmuch as the lifetime look-back required by the regulations operates to subject older drivers to a more strict standard than a younger driver, thereby creating a classification based upon age. As the final cause of action, *677 petitioner argues that article 78 relief in his favor is necessary to ameliorate the harsh imposition of this sanction by DM\£ as a permanent loss of his license is disproportionate to the offense.
In the answer, respondent asserts that petitioner’s four-month time limit to object to the enactment of the regulations expired well before he filed the instant proceeding, and as such this application is time-barred. Respondent points out that the new regulations under which petitioner’s re-licensure was denied represent a valid exercise of the agency’s discretion. While the new regulations were pending, respondent points out that it did not make any licensing decisions with respect to drivers whose records contained multiple alcohol related violations, in the interest of ensuring that drivers with similar driving records would be treated uniformly. Additionally, there is no proscribed statutory period in which the agency must make a determination on applications for re-licensure.
Prior to February 23, 2011, a DMV review on an application for reissuance of a driver’s license, done by DMV’s Driver Improvement Unit (DIU), encompassed only a 10-year look-back. A driver with three or more DWI convictions would be assessed an extended waiting period of six months for each incident. The regulations enacted in 2011 were an attempt to strengthen the DMV’s ability to deny re-licensing to problem drivers who posed an unusual or immediate risk upon the highways, and allowed for a lifetime look-back, but only provided for an additional year of revocation in addition to the mandatory statutory minimum revocation periods set forth in Vehicle and Traffic Law § 1193 (2) (b). Concluding that even this did not resolve the issue of “problem drivers,” as an emergency measure, the September 25, 2012 regulations were enacted, allowing the DIU to review an individual’s lifetime driving record, with five or more alcohol or drug related incidents or any combination thereof requiring denial of re-licensure.[4]
As a preliminary matter, this court finds that petitioner’s application is timely. Here, the effective date for the timeliness of the application is the date that the challenged determination *678 inflicted an actual, concrete injury upon the petitioner (Matter of Town of Olive v City of New York, 63 AD3d 1416 [3d Dept 2009]).
Contrary to petitioner’s argument, under Vehicle and Traffic Law §§ 510 (6) and 1193 (2) (c) (1), the Commissioner of Motor Vehicles is authorized to invoke her discretion to establish criteria and methodology for re-licensing after revocation of a driver’s license. By statute, and recognizing the special expertise of the DMY the Commissioner has been granted broad, explicit and exclusive administrative authority over the issuance of driver’s licenses and the authority to adopt the rules and regulations to carry out the DMV’s functions (Boreali v Axelrod, 71 NY2d 1 [1987]). Surely, in light of the DMV’s statutory purposes of insuring highway safety by keeping recidivist drunk drivers off the road (Matter of Quealy v Passidomo, 124 AD2d 955 [3d Dept 1986]), the Commissioner’s authority to enact specific regulations—including defining when and under what circumstances an applicant may “permanently” be denied a license after a revocation of license—is entirely consistent with her statutory power to license a driver (Matter of Barton Trucking Corp. v O’Connell, 7 NY2d 299, 307 [1959]). Further, given the statutorily authorized discretion granted the Commissioner to refuse to issue a license after a mandatory minimum period of revocation, it cannot be concluded that the legislature intended, by enacting section 1193 (2) (c) (1), to limit her authority to impose a lifetime license restriction to only one circumstance, or that the DMV exceeded its authority and acted outside of the law in issuing the subject regulatory amendments (Cubas v Martinez, 8 NY3d 611 [2007]).
In order for the court to conclude that a regulation is unreasonable, arbitrary or capricious, petitioner must demonstrate that it lacks a rational basis (Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326 [1995]). Because the Commissioner has the statutory responsibility to promote highway safety and to prevent death and injuries caused by impaired or intoxicated drivers, subjecting applicants with multiple offenses to stricter scrutiny is entirely rational (People v Roach, 226 AD2d 55 [4th Dept 1996])—provided that she passes individually on the merits of the petitioner’s application, including consideration of “unusual, extenuating and compelling circumstances that may be presented for review” (15 NYCRR 136.5 [d]) and not merely acts mechanically on the basis of her general policy (Matter of Col *679 lins v New York State Liq. Auth., 49 AD2d 1000 [3d Dept 1975], citing Matter of Hub Wine & Liq. Co. v State Liq. Auth., 16 NY2d 112 [1965]). On the record presented, including petitioner’s six alcohol related driving convictions, it cannot be said that there was no rational basis to deny his license, or that the acts of the Commissioner were arbitrary or capricious (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 233 [1974]).
It is well established that the ex post facto doctrine applies to a law which makes conduct that was lawful when engaged in retroactively unlawful and is applicable only to statutes that impose punishment or are “so punitive in nature and effect as to have its retroactive effect barred by the Ex Post Facto Clause (US Const, art I, § 10)” (People v Sprint Nextel Corp., 114 AD3d 622, 623 [1st Dept 2014]; Matter of State of New York v Nelson, 89 AD3d 441 [1st Dept 2011]). Here, viewing the subject amendments as civil requirements for becoming licensed (a privilege), rather than criminal penalties punishing criminal conduct, no ex post facto argument can be made. The purpose of the subject regulations are not to punish petitioner for crimes previously committed, but to reasonably regulate a problem driver’s access to a driver’s license (Matter of McCormack v Posillico, 213 AD2d 913 [3d Dept 1995]).
Petitioner’s arguments that his right to due process was violated by respondent’s decision to hold the applications of “problem drivers” until the enactment of the new regulations and that the enactment itself punishes older drivers or creates an age suspect group are likewise without merit. First, the time for petitioner to contest the timeliness of the determination was by writ of mandamus prior to its issuance (Lally v Johnson City Cent. Sch. Dist., 105 AD3d 1129 [3d Dept 2013]). Now, the judicial review is limited to finding whether there was a rational basis for the administrative action and the denial of petitioner’s application for a license (Matter of Hughes v Doherty, 5 NY3d 100, 105 [2005], citing Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 277-278 [1972]). Further, as this court has previously determined that the regulations are rationally based, petitioner cannot argue that he is a member of a suspect class, nor has he demonstrated that the regulations have a discriminatory impact (Becker v City of New York, 249 AD2d 96 [1st Dept 1998]).
The court has reviewed and considered the remaining arguments of the parties and finds them to be unavailing.
*680 Accordingly, based on the above, it is ordered, that the relief demanded in the article 78 petition is denied.

. Respondent identifies petitioner’s date of application as June 2012, with a copy provided marked “Received June 12, 2012.”

. The parties do not dispute the accuracy of the driving abstract utilized in the record.

. The denial was made on April 30, 2013, but not mailed to petitioner until May 31, 2013.

. Pursuant to 15 NYCRR 136.5 (d), the Commissioner has the discretion to waive the “life-time ban” and grant a license, upon “consideration of unusual, extenuating and compelling circumstances that may be presented for review.” This information was contained in the January 9, 2013 denial letter sent to petitioner, and it gave him 30 days to make any submissions that could support an argument for compelling or extenuated circumstances. Petitioner did not submit such an argument, thus waving any opportunity to do so on appeal.