| **Lurie v New York City Dept. of Educ.** |
|:---:|
| 2025 NY Slip Op 30630(U) |
| February 24, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 162176/2023 |
| Judge: Ariel D. Chesler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. ARIEL D. CHESLER**

*Justice*

-------------------------------------------------------------------X

AMANDA LURIE,

Petitioner,

- v -

NEW YORK CITY DEPARTMENT OF EDUCATION, CITY OF NEW YORK

Respondent.

-------------------------------------------------------------------X

PART **62**

INDEX NO. 162176/2023

MOTION DATE 01/12/2024

MOTION SEQ. NO. 001

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 6, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45

were read on this motion to/for _____ ARTICLE 78 (BODY OR OFFICER) _____.

Upon the foregoing documents, it is

In this proceeding, Petitioner seeks an Order pursuant to Article 78 of the Civil Practice Law and Rules ("CPLR") declaring that the termination of Petitioner on August 23, 2023, is arbitrary and capricious, and reversing said decision with back pay, interest, costs, and legal fees. Respondent cross-moves for an Order pursuant to section 7804(f) and Rule 3211(a)(7) of the CPLR, dismissing the Amended Verified Petition in this matter for failure to state a cause of action.

**BACKGROUND**

Petitioner was employed by the Respondent from September 8, 1992, until August 23, 2023. Petitioner held various positions over the course of her career. Most recently, Petitioner was working in the role of Senior Advisor to the Office of the First Deputy Chancellor. However, Petitioner's position pertinent to this proceeding was Senior Executive Director with the Office of Student Enrollment ("OSE"). In her OSE Senior Executive Director role, Petitioner was to oversee

**162176/2023 LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**
**Motion No. 001**

**Page 1 of 11**

1 of 11

12 Department of Education ("DOE") family welcome center enrollment offices ("FWC") and several satellite offices.

On March 4, 2021, the Office of Special Investigations ("OSI") received a referral from the Special Commissioner of Investigations for the New York City School District ("SCI") concerning the conduct of Petitioner. OSI substantiated allegations that Petitioner committed time theft and fraud in violation of NYC Charter Chapter 68 section 2604(b)(2); NYC Conflicts of Interest Board Rules section 1-13 (a)-(b); Chancellor's Regulations C-110 and C-605. Specifically, that Petitioner's CyberShift[1] timesheet entries were fraudulent, that she used social media for an excessive amount of time and conducted personal business during the workday. OSI then conducted an investigation[2] and interviewed several of Petitioner's colleagues.

OSI interviewed the OSE Director of Operations, Anna Alexandrakis Pappas. Ms. Pappas claimed she was responsible for entering Petitioner's work hours into CyberShift and was told by Petitioner to enter her time as 8:00am to 5:00pm everyday unless instructed otherwise. Ms. Pappas expressed concerns entering these hours because they did not correspond with Petitioner's actual work hours. She stated that Petitioner would often arrive to work late mostly after 9:00am, leave work early often after 12:00pm, "spent an inordinate amount of time during working using social media, especially Facebook" and "rarely visited the 11 or so OSE sites" and conducted most of her meetings from her car. (OSI Investigative Report p.2 [NYSCEF Doc. No. 16]).

OSI also interviewed Kimberly Castrillon, the Director of the Queens FWC Paul Lomtevas, the Assistant Director of the Queens FWC. Both stated they only saw Petitioner once or twice a

---

[1] CyberShift is an automated system that the DOE uses to track employees time and attendance.
[2] This investigation consisted of multiple interviews with people who worked with Petitioner. The interviews, whether in person or virtual were conducted by Investigator Jonathan May over a span of 6 months from May 2022 to October 2022.

**162176/2023   LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**   **Page 2 of 11**
**Motion No.  001**

year at the Queens FWC site. Ms. Castrillon noted that Petitioner "participate[d] in Teams calls from her car or from her porch at home." (*Id.* at 3).

The OSE Education Administrator, Nicole Theo, told OSI that Petitioner would not come to work when she had doctors' appointments but would not use her sick leave on those dates. Ms. Theo also stated that Petitioner "was rarely seen at her office in Fordham Plaza and visits the Manhattan FWC office once a year." (*Id.*).

Paul Heffman, Senior Director of Student Enrollment, asserted that Petitioner "constantly posted on Facebook and sold items on Poshmark[3] during work hours." (*Id.*). Mr. Heffman also claimed that the last time Petitioner visited the Staten Island FWC was in November 2019. Mr. Heffman stated he had "seen her during video conference calls in her car, before she quickly turned off her camera." (*Id.*).

A witness whose name and title are redacted from the report stated that she received complaints from other staff members that Petitioner was not working her required hours, not visiting enrollment offices and that "no one knows where [Petitioner] is." (*Id.*). This witness also stated that even "after the pandemic lockdown was lifted, [Petitioner] was seen participating in video calls while walking or in a car." (*Id.*).

Former OSE Executive Director, Margaret Rogers, told OSI that Petitioner was never in her office and it was very hard to get in touch with her when they would work together. Ms. Rogers also stated during the period they worked together Petitioner only visited Sutphin OSE office approximately once a year and "[Petitioner] taught classes at Lehman College and spent DOE time planning her classes and grading papers." (*Id.* at 4).

---

[3] Poshmark is a social commerce market

**162176/2023   LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**
**Motion No. 001**

**Page 3 of 11**

[* 3]

Samantha Gounden, OSE Executive Director of Professional Development reported to Petitioner and worked at the Fordham Plaza office. Ms. Gounden said Petitioner was in the Fordham office one or twice a month for an hour or two and that "she never knew where [Petitioner] was going, and that she was frequently late for work and meetings." (*Id.*).

It is of note that Mr. Lomtevas, Ms. Castrillon, Mr. Heffman and other witnesses mentioned, in their respective interviews, that Petitioner did not help to facilitate a good work environment. They claimed that the ways Petitioner would interact with them created a toxic work environment and would negatively impact morale.

Petitioner in her role of OSE Senior Executive Director was also interviewed by OSI. Petitioner claims she visited these offices regularly and worked her full 35 hours per week and that any time off she took she would make up during her lunch hours. Petitioner also claimed that she worked so many hours that she was easily able to make up any time she took off. During the interview, OSI presented Petitioner with many CyberShift records reflecting that Petitioner had worked entire days throughout certain weeks that did not coincide with scheduled vacations or doctor appointments placed in the shared office calendars. Petitioner did not have an explanation for these inconsistencies. Specifically, there was a period of time through the week of August 12, 2019, that she put in that she would be on vacation but was not reflected in CyberShift. She did not have answers but later stated that in a follow up email, after her interview, that her vacation was cancelled and she was in fact home that week. She did not clarify whether she was working from home during that time period.

When asked by OSI, Petitioner denied using social media during work hours. OSI again presented Petitioner with printouts of numerous posts she made to Facebook and Twitter during work hours and scheduled meetings. Specifically, at 11:12 a.m., on Tuesday, August 9, 2022,

**162176/2023  LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**
**Motion No. 001**

**Page 4 of 11**

4 of 11

[* 4]

during a scheduled DPCKickoff Meeting, Petitioner replied to friends' posts on Facebook, "Exactly. Sometimes anticipation is all I have. I need some smirking to get through the day. I'm fully enjoying knowing he's all twisted after the FBI went through his stuff and there's nothing he can do about it." (*Id.* at 9). At 11:31 a.m. that same day during a scheduled Leadership Call, Petitioner posted to Facebook about Donald Trump and "watch[ing] [his supporters] explode." (*Id.*). Petitioner claimed "since work was slow during the lockdown portion of the pandemic, she spent idle time on social media" also contending that she made several posts during lunch hours. (*Id.* at 5). OSI then showed Petitioner numerous posts she made to Twitter during work hours selling Poshmark items and Petitioner claimed she did not make those posts herself and instead they reflected posts that others "shared" with her or "tagged" her in. (*Id.*).

OSI concluded that based on the investigation that took place the allegation that Petitioner committed time theft and fraud is substantiated. (*Id.* at 9). On August 23, 2023, Petitioner was sent a termination letter detailing the reasoning for her termination following the investigation.

## DISCUSSION

Under the New York City Charter, NYC Charter, Ch. 68, section 2604 (b)(2) states:

Prohibited interests and conduct: No public servant shall engage in any business, transaction or private employment, or have any financial or other private interest, direct or indirect, which is in conflict with the proper discharge of his or her official duties.

Similarly, the Rules of the NYC Conflicts of Interest Board Rules section 1-13 (a)-(b) state:

(a) Except as provided in subdivision (c) of this section, it shall be a violation of City Charter § 2604(b)(2) for any public servant to pursue personal and private activities during times when the public servant is required to perform services for the City.

(b) Except as provided in this section, it shall be a violation of City Charter § 2604(b)(2) for any public servant to use City letterhead, title, personnel, equipment, resources, supplies, or technology assets for any non-City purpose. For purposes of

**162176/2023   LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**

**Motion No. 001**

**Page 5 of 11**

5 of 11

[* 5]

this subdivision "technology assets" includes but is not limited to e-mail accounts, internet access, and official social media accounts.

As a public servant, Petitioner is subject to these rules. OSI investigated and found numerous posts from Petitioner's social media pages that she would make posts on Twitter and Poshmark to sell clothing items she had listed on her Poshmark profile while working. As stated above, Petitioner contends that she was not making these posts herself. OSI found Petitioner's explanation controverted by the posts themselves, as every post presented was made by Petitioner as "Feminist Fatale" and says, "Check out this listing!" (*Id.*). Petitioner never contested ownership of the mentioned profiles. This is but one example of Petitioner pursuing business transactions during times she was required to perform her duties as a city employee, thus violating both NYC Charter Chapter 68 § 2604 (b)(2), and Conflicts of Interest Board Rules § 1-13 (a)-(b).

Chancellor's Regulations C-110 states:

A. Outside Employment (Non-Department of Education) Activities -General Rules Officials and employees shall not solicit, negotiate for, or engage in any private business, transaction, or professional or political activity during the hours they are scheduled to work for the New York City Department of Education or on Department of Education property. This includes lunch periods, preparation periods, breaks, or any other time that the official or employee is deemed officially to be performing Department of Education duties. Officials and employees shall not use supplies or any other item purchased with Department of Education funds, which are considered to be the property of the Department of Education, in furtherance of their private business, professional, or personal activities. Officials and employees shall not advertise their business, political, or professional activities on Department of Education property. Advertisements for any official or employee's private business, political, or professional activities shall not indicate the official or employee's specific office, division, school district, or program without written approval of the Department of Education or, where appropriate, the Chancellor. Duplication of these advertisements on Department of Education time is prohibited.

OSI presented evidence that Petitioner made several social media posts to promote the sale of items she listed for sale on Poshmark during work hours. Petitioner contends that even if she did

**162176/2023   LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**
**Motion No. 001**

**Page 6 of 11**

6 of 11

make social media posts to promote her Poshmark sales they were during her lunch hours and not while she was working. However, that is irrelevant as the Regulation prohibits these types of engagements and transactions even during lunch hours and therefore Petitioner was in violation of Chancellor's Regulation C-110.

Chancellor's Regulations C-605 states:

II. SPECIAL CONDITIONS OF EMPLOYMENT A. Outside Earned Income Unless the Chancellor shall have given prior written approval, no pedagogical managerial employee shall expend time or otherwise engage in any private employment, profession, business or other activities from which compensation, direct or indirect, is derived, nor shall such an employee serve as director or officer of any corporation or institution.

III. HOURS OF WORK A. Pedagogical managerial employees shall work whatever hours and days are required to carry out their responsibilities subject to approval of the appropriate person listed in Section III.B below. The regular work week shall be not less than thirty-five (35) hours.

Through their investigation OSI found that Petitioner was frequently noncompliant with the above sections of Chancellor's Regulation C-605. Numerous witnesses and colleagues claimed Petitioner would often come in late, leave early and work less than her mandatory 35 hours a week. More egregiously, the witnesses stated that she would expend the time she was at work on her private activities, such as selling items on Poshmark, grading papers for her role teaching at Lehman College and even making Facebook post's which coincided with scheduled meetings in her work calendar.

With respect to Article 78 proceedings, the nature of the Court's review is extremely limited. The Appellate Division, First Department, explained in *Franklin St. Realty Corp. v NYC Envtl. Control Bd.*, 164 AD3d 19 (1st Dept 2018):

The proper standard of review [in an Article 78 proceeding] is whether [the subject] determination was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious, or was an abuse of discretion. If we find that the determination is supported by a rational basis, we must sustain the

**162176/2023   LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET**          **Page 7 of 11**
**AL**
**Motion No.  001**

[* 7]

determination even if we conclude that we would have reached a different result than the one reached by the agency. Further, courts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise. [internal citations omitted]

Further, in *Hughes v. Doherty*, 5 N.Y.3d 100 (2005), the Court of Appeals held when a Court reviews a determination under Article 78, "The judicial function is exhausted when there is to be found a rational basis for the conclusions approved by the administrative body."

Here, the written notice of termination was letter dated August 23, 2023 (NYSCEF Doc. No. 9), sent to Petitioner from Chris Groll, Chief Executive, Office of the First Deputy Chancellor. This letter referenced the findings made in the OSI Investigative Report. The Report sets forth the names of at least eight different witnesses that were interviewed, each of which generally corroborated the allegations against Petitioner with respect to time theft and fraud. The Letter also stated that Petitioner had been given the opportunity to review the Report and submit a formal response, but Petitioner had failed to do so. Deference is given to the agency in interpreting the regulations it administers because of its expertise in those matters, and its determination must be upheld as long as it is reasonable (*see Chin v New York City Bd. of Standards and Appeals*, 97 AD3d 485, 487 [1st Dept 2012]).

To be clear, the DOE acted rationally in terminating petitioner based on substantiated findings of time theft and fraud, and her engaging in social media and other work during her employment hours. Nor can it be said that this determination was an abuse of discretion or arbitrary and capricious.

Petitioner did not offer any argument as to how the DOE's decision is arbitrary and capricious. Instead, she advanced claims that witnesses had a grudge against her and used the interview process to get back at her.

**162176/2023   LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**
**Motion No. 001**

**Page 8 of 11**

8 of 11

Further, Petitioner submitted a number of sworn affidavits (NYSCEF Docs. Nos. 25-29) from witnesses. The Court need not consider these affidavits as they are outside the scope and record of the DOE's determination to terminate Petitioner. Even if the Court were to consider them, only two of those affidavits, namely the affidavit from Sarah Kleinhandler and Nicole Theo were from a witness that had been interviewed and included in the Report[4]. In her affidavit, Ms. Kleinhandler's substantiated a number of Petitioner's defenses claiming for example that "As with the entire staff whom I directly supervised, I always knew where the Petitioner was. I was always able to reach her." (Kleinhandler Affidavit, para.6 [NYSCEF Doc. No. 26]). On the contrary, present in the unredacted OSI report was a screenshot of a text message from Ms. Kleinhandler to Ms. Amy Basile asking "Is Amanda [Lurie] at work today or is she working from home? I know you don't want to say but it doesn't sound like she's at an office." (Unredacted OSI Investigative Report, p.10 [NYSCEF Doc. No. 45]. The unredacted CSI report also indicated that an allegation against Ms. Kleinhandler for failure to supervise Petitioner's work hours and CyberShift timekeeping was substantiated, perhaps giving Ms.Kleinhandler incentive to submit an additional affidavit to Petitioners defense. In Ms. Theo's affidavit, she states that, "Anna Pappas tried to influence my testimony and coach me as to what to say to Investigator Jonathan May regarding Petitioner." (Theo Affidavit, para.3 [NYSCEF Doc. No. 27]). Nevertheless, Ms. Theo did not actually retract any of the factual statements she had made to the investigator that were memorialized in the Report. Additionally, there is nothing on this record to suggest that the other six witnesses who were interviewed for the Report have retracted or changed their statements. The DOE reasonably relied on the information presented in the OSI Report when making their decision to terminate Petitioner.

---

[4] Initially, the Court was provided a redacted report, wherein Ms. Kleinhandler's name was redacted on page 6 of the report. Upon filing of Respondent's reply papers, a full unredacted report was attached.

**162176/2023  LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**
**Motion No. 001**

**Page 9 of 11**

9 of 11

[* 9]

On a motion to dismiss for failure to state a cause of action under CPLR § 3211, the Court must accept the facts alleged as true from the four corners of the complaint, affording it liberal construction and according petitioner the benefit of favorable inference, to determine whether the facts alleged sufficiently states a cause of action (*see Leon v. Martinez*, 84 NY2d 83, 87–88 [1994]; *Rovello v. Orofino Realty*, 40 NY2d 633 [1976]). The allegations in the Amended Petition do not raise a question as to whether the DOE acted in violation of the law and fails to state a cause of action. Accordingly, the court finds that there was a rational basis for the termination of petitioner, and that such decision was not arbitrary and capricious.

Petitioner's arguments regarding two New York Post articles published in August 2023 and her promotion in March 2023, following issuance of the OSI report, are unavailing. The fact that Petitioner was ultimately terminated following these articles does not alter that her termination was properly and rationally based on the OSI investigation which took place in 2022 and was not arbitrary and capricious. There is nothing in the record supporting the notion that DOE had any deadlines or required timeline to act on the OSI report about Petitioner's time theft and fraud. To the contrary, at an at will employee may be "terminated . . . at any time for any reason or even for no reason" (*Murphy v. Am. Home Prods. Corp.*, 58 NY2d 293, 300 [1983]). Accordingly, the timing of the termination does not make it irrational, in bad faith, or arbitrary and capricious.

Further, although Petitioner would like it to do so, the Court cannot "weigh the evidence or reject the choice made by [such agency] where the evidence is conflicting and room for choice exists." (*Miserendino v. City of Mount Vernon*, 96 AD3d 946, 947 [2d Dept 2012]). The DOE determined that Petitioner violated the rules of her employment, and rationally terminated her at-will employment at the time of its choosing. Nor is there any evidence that all the concerns raised in the affidavits provided by Petitioner were known by DOE or raised in its investigation.

**162176/2023  LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**
**Motion No. 001**

**Page 10 of 11**

10 of 11

[* 10]

Additionally, while it is unnecessary in the Court's determination of this matter, it is also of note that The City and the Board of Education are separate and distinct legal entities and The City cannot be held liable for torts committed by the DOE (*see Antonetti v City of New York*, 111 AD3d 558 [1st Dept 2013]; *Perez v City of New York*, 41 AD3d 378, 379 [1st Dept 2007]). Therefore, the City of New York is not a proper party to this action.

## CONCLUSION

For the reasons set forth above, it is hereby:

**ORDERED,** that Petitioner's motion is DENIED; and it is further

**ORDERED,** that cross-motion made by Respondents is GRANTED; and it is further

**ORDERED,** that the Petition is dismissed, with prejudice; and it is further

**ORDERED,** that there being no other applications, this proceeding is closed.

HON. ARIEL D. CHESLER
J.S.C.

| | |
|---|---|
| __2/24/2025__ | _____ |
| DATE | ARIEL D. CHESLER, J.S.C. |

CHECK ONE: [X] CASE DISPOSED     [ ] NON-FINAL DISPOSITION

[ ] GRANTED    [ ] DENIED    [X] GRANTED IN PART    [ ] OTHER

APPLICATION: [ ] SETTLE ORDER     [ ] SUBMIT ORDER

CHECK IF APPROPRIATE: [ ] INCLUDES TRANSFER/REASSIGN     [ ] FIDUCIARY APPOINTMENT     [ ] REFERENCE

**162176/2023 LURIE, AMANDA SPINA vs. NEW YORK CITY DEPARTMENT OF EDUCATION ET AL**
**Motion No. 001**

Page 11 of 11

11 of 11